Henry R. **WALTERS** and Reva B. Walters, Appellants (Plaintiffs),

v.

Harvey J. **MICHEL** and Melody A. Michel, Appellees (Defendants).

No. 87–80.

Supreme Court of Wyoming.

Nov. 25, 1987.

John I. Henley of Vlastos, Brooks & Henley, P.C., Casper, for appellants (plaintiffs).

Roger E. Shumate of Murane & Bostwick, Casper, for appellees (defendants).

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

In this action for breach of contract, plaintiffs Henry R. Walters and Reva B. Walters prayed for specific performance and/or the recovery of damages. The trial court granted summary judgment to defendants Harvey J. Michel and Melody A. Michel.

We reverse and remand.

Plaintiffs raise the following issues:

1. "WHERE A CONTRACT FOR SALE OF REAL PROPERTY ENUMERATES THAT THE REMEDIES FOR BREACH OF SUCH CONTRACT MAY BE THE RETENTION OF A SECURITY DEPOSIT, OF WHICH THERE IS NONE, OR SPECIFIC PERFORMANCE, MAY THE PROSPECTIVE PURCHASER OF THE REAL PROPERTY BREACH THE CONTRACT, MAKE SPECIFIC PERFORMANCE IMPOSSIBLE, AND OBTAIN SUMMARY JUDGMENT AGAINST THE NON–BREACHING PARTY BECAUSE THE ENUMERATED REMEDIES ARE NO LONGER AVAILABLE?"

2. "NOTWITHSTANDING THE IMPOSSIBILITY OF SPECIFIC PERFORMANCE DUE TO THE ACTS OF THE BUYER, DOES A NON–BREACHING PARTY WHO FULFILLS HIS OBLIGATION TO MITIGATE DAMAGES WAIVE HIS REMEDY?"

3. "ARE THE [PLAINTIFFS] ENTITLED TO SUMMARY JUDGMENT?"

Plaintiffs and defendants entered into negotiations for the sale/purchase of plaintiffs' residence. On May 16, 1986, as a result of these negotiations, the parties agreed to a purchase price of $92,700 and signed a real estate purchase agreement.

Acting in reliance on that agreement, plaintiffs entered into a lease agreement for another home, paying $850 to secure such lease. Sometime later, defendants informed plaintiffs that they would not be purchasing the home and that they would not be complying with the previously signed agreement.

On August 4, 1986, plaintiffs brought suit against defendants for breach of contract, asking for an order of specific performance and/or the recovery of damages on the basis of the difference between the purchase price agreed upon and the market value of the residence on the day of closing, all consequential damages including expenses, rents, and loss of all business opportunities, any and all other damages resulting from the breach, and attorney's fees associated with the action. Plaintiffs then, because of the declining economy, sold their home for $78,000.

During the months of December 1986 and January 1987, defendants and plaintiffs, respectively, filed motions for summary judgment along with supporting affidavits and depositions.[1] After a hearing, the trial court granted summary judgment in favor of defendants, finding that there was no genuine dispute as to any material fact and that defendants were entitled to judgment as a matter of law. This appeal followed.

We have repeated countless times the general standards governing appellate review of summary judgments. In *Fiedler v. Steger*, Wyo., 713 P.2d 773, 774 (1986), we stated:

1. In one affidavit filed by plaintiffs, it was stated that plaintiffs received the amount of $850 from defendants as a buy-out of plaintiffs' lease deposit and in mitigation of plaintiffs' damages from entering into the lease in anticipation of the consummation of the sale of plaintiffs' home to defendants. However, plaintiffs state such moneys were accepted solely for that purpose and were not received as payment in full or in any way in complete satisfaction of any obligations which defendants might have to plaintiffs.

"A succinct and conclusive critique of the Wyoming summary-judgment law is afforded by the court in *Garner v. Hickman*, [Wyo.,] 709 P.2d 407, 410 (1985): " 'When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts.' " (Citations omitted.)

The sole dispute here is over what remedies may be afforded plaintiffs as a result of defendants' breach of the agreement. When applying the applicable stage analysis of a summary judgment as enumerated in *Cordova v. Gosar*, Wyo., 719 P.2d 625 (1986), we conclude that this case encompasses a substantive legal issue disposition or a stage five summary judgment:

"*Stage Five:* legal issue disposition. Resolution in many cases is accommodated at this time by a determination that the issue between the parties is not factual in nature, but rather involves a contested issue of law which consequently will decide the case. This stage resolution involves interpretation of unambiguous contracts, suits on rationally uncontested promissory notes, and a variant kind of circumstances where the facts are not in dispute but the legal principles are otherwise at issue." Id. at 636 (emphasis in original).

See also *Commercial Union Insurance Company v. Stamper*, Wyo., 732 P.2d 534 (1987).

The only clause encompassed in the agreement which specifies remedies in case of breach reads as follows:

"In the event of the buyer's failure to reasonably complete the terms and conditions of this offer, the buyer agrees that the seller *may elect to either* retain the deposit made herewith as fixed and liquidated damages for the buyer's failure to complete the sale as herein provided, *or* to maintain an action to enforce specific performance of this agreement." (Emphasis added.)

Defendants assert that the remedies enumerated in the contract are exclusive and that, because no security deposit was collected and because plaintiffs made specific performance impossible by selling the house to a third party, defendants' responsibility to plaintiffs for breach of the contract has ended. We do not agree.

Remedies mentioned in a contract generally are not exclusive remedies. Such remedies are held to be merely some of several remedies which might be pursued by an injured party. 1 Am.Jur.2d, Actions § 31 (1962). The contract between plaintiffs and defendants did not include a limiting "exclusive remedy" clause.

Further, as stated in *Helmer v. Transamerica Title Insurance Co.*, 279 Or. 457, 569 P.2d 10, 14 (1977):

"A subsequently sought remedy will only be barred where it is inconsistent with the remedy initially pursued."

In that case, the defendants initially counterclaimed for specific performance and thereafter amended their counterclaim for damages. Giving consideration to the Restatement of Contracts § 382 (1932),[2] that court made the ruling that such amendment and the award of such damages were allowable and stated:

"Both are based upon and recognize the continued validity of the contract. They do nothing more than reflect a change in the facts which occurred during the pendency of the lawsuit prior to trial.

2. Restatement of Contracts § 382 (1932) states in pertinent part:
"The bringing of a suit either for specific performance or for compensation in money is

not such an election of the remedy sued for as to operate as a bar to a later suit or to an amendment asking for the other remedy with respect to the same breach * * *."

The case is thus distinguishable from those where a party first seeks rescission and later elects to proceed on the contract. The election of remedies doctrine generally forbids such action on the grounds that a party should not be allowed to disaffirm and then affirm the contract. But where a party's opponent is not unduly prejudiced by an amendment to the pleadings prior to trial, it is preferable that the parties be allowed to mitigate their losses and amend their pleadings to seek damages." 569 P.2d at 14.

We see no reason why such rationale may not be followed in this case.

"[T]he rule regarding mitigation of damages is stated as follows:

" 'Where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent.' " *Brown v. Newton,* 59 N.M. 274, 282 P.2d 1113, 1119 (1955), quoting *Warren v. Stoddart,* 15 Otto 224, 105 U.S. 224, 229, 26 L.Ed. 1117 (1881).

See also *Wyoming Bancorporation v. Bonham,* Wyo., 563 P.2d 1382, reh. denied 566 P.2d 219 (1977).

"The legal rule of mitigation is designed to discourage persons against whom wrongs have been committed from passively suffering economic loss which could be averted by reasonable efforts, or from actively increasing such loss where prudence requires that such activity cease." *Hickey v. Griggs,* 106 N.M. 27, 738 P.2d 899, 902 (1987).

Summarily denying remedy to a party seeking damages with regard to a specific performance claim after he has attempted to mitigate damages completely abrogates the intended goal at the foundation of the legal rule of mitigation.

We agree with that language espoused in the case of *Grummel v. Hollenstein,* 90

Ariz. 356, 367 P.2d 960, 962 (1962), where it is stated:

"Whether or not a court will award damages when specific performance cannot be enforced, depends upon the particular facts involved. The general rule is discussed in 49 Am.Jur., Specific Performance § 173 (1943):

" 'As the rule is often laid down, a court of equity will not grant pecuniary compensation in lieu of specific performance *unless performance has become impracticable, or unless the case presented is one for equitable interposition such as would entitle the plaintiff to performance but for intervening facts, such as* the destruction of the property, *the conveyance of the same to an innocent third person,* or the refusal of the vendor's wife to join in a conveyance, which would render the decree useless or inadequate.' " (Emphasis added.)

In this case, plaintiffs sold their home in a rapidly decreasing market in an attempt to mitigate the resulting damages of the breach. Moreover, defendants may not assert the validity and benefit of a contract when they were the first to violate its terms. *Harsha v. Anastos,* Wyo., 693 P.2d 760 (1985).

We hold that, in addition to consequential damages, plaintiffs should collect damages in an amount which represents the loss of the transaction, being the difference between the contract price and the value of the property at the time of the breach of contract, *Walker v. Graham,* Wyo., 706 P.2d 278 (1985); *Reed v. Wadsworth,* Wyo., 553 P.2d 1024 (1976), less the net amount received in mitigation of the damages. See generally 22 Am.Jur.2d, Damages §§ 169 and 203 (1965).

Reversed and remanded to the trial court for disposition pursuant to this opinion.