**JOHNSON STORAGE AND MOVING COMPANY, Appellant (Plaintiff),**

v.

**VICTORY, INCORPORATED, d/b/a High Plains Security Systems, Appellee (Defendant).**

No. 88–320.

Supreme Court of Wyoming.

May 26, 1989.

William L. Combs and Patrick R. Day of Holland & Hart, Cheyenne, for appellant.

William A. Riner, Cheyenne, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

This controversy concerns an installation contractor who entered into a purchase order agreement to provide a fire alarm system for a warehouse facility. Whether the agreement included not only the warehouse area but also the office area was litigated in district court and the adverse decision to the warehouse facility owner is now appealed. The defined issue is whether completion costs should have been allowed against the contractor to extend the system throughout the office area on a warranty of suitability.

We affirm.

A representative of Johnson Storage and Moving Company (Johnson Storage), appellant, called the owner of Victory, Incorporated, d/b/a High Plains Security Systems (High Plains), appellee, for a quote to install a fire alarm system in its Cheyenne, Wyoming warehouse facility. High Plains submitted a bid proposal dated February 4, 1987 in the amount of $4,675. The job location box at the top of the bid only stated "warehouse" and, in descriptive terminology, provided for the installation.

We hereby submit specifications and estimates for:

1 MP–24 Fire lite fire alarm panel complete w/2 detection zones & rechargeable batteries

3 10″ Fire alarm bells (2 interior, 1 exterior)

24 BRK1824–H Smoke detectors w/built in heat detectors (6 in west end & 18 in east end of warehouse)

1 Multi-channel digital communicator programmed to contact central station (there is a 25.00 monthly monitoring fee for the 2 zone monitoring service)

Conduit, fittings, boxes, wire

All equipment is guaranteed by manufacturer for one year.

This will meet or exceed any I.S.O. requirements.[1]

This proposal was accepted, creating the contractual dispute present in this appeal. The smoke detectors and equipment were duly installed in the warehouse using equipment and methods admittedly meeting or exceeding I.S.O. requirements for the warehouse area. (Insurance Service Office—a fire insurance rating agency.) No insufficiency as installed is presented. A billing following completion of installation was paid in full for the bid price.

However, when Johnson Storage applied for the desired reduced fire insurance rates it was turned down. Johnson Storage was told the reduction would be available only if the office area was also equipped with a fire alarm system since I.S.O. required 100 percent coverage for a building. This meant adding more zone panels and installing an appropriate number of smoke detectors in closets and offices located in the facility. The estimated cost for the additional system was about $6,000 more than the original bid of $4,675.

---

**1.** The provision stating "[t]his will meet or exceed any I.S.O. requirements" was inserted in handwritten addition on the purchase order form before execution which now presents the argument about the extent of the contractor's obligation which is in essence a warranty of suitability for a defined purpose.

Johnson Storage demanded that High Plains install the extended system without additional charge in order to comply with the installer's completion warranty. The demand was rejected and another contractor bid the further installation at a price of $6,995. Johnson Storage filed suit claiming installation contract breach and failure to complete with claimed damage including:

A. Loss of insurance rate credits in the past, through and including April of 1987.

B. Loss of insurance rate credits incurred subsequent to the filing of this Complaint and prior to the entry of a judgment in this matter.

C. Lost profits.

D. Loss of rental value of the storage facility.

E. Cost of completing an I.S.O.-approved fire detection system.[2]

Following trial, the district court found that Johnson Storage showed recoverable damages of $978.15 for lost insurance rate credits to which $500 was added as sanction attorney's fees which arose from a procedural claim. It is from this judgment of $1,478.15 that Johnson Storage appeals.[3] Johnson Storage filed a motion to alter or amend the judgment under W.R.C.P. 59(f) on the basis of insufficient damages being awarded, including specific objection that completion costs were not included. After further extensive briefing, the district court denied the motion in an opinion letter which afforded this rationale:

It may be that a more appropriate disposition of this case would have been to find that there never was the requisite "meeting of the minds" as to the work to be done. Clearly, under the evidence, plaintiff and defendant both thought at the time of the initial meeting referred to above, that the system would be installed in only the warehouse portion of the facility and not in the other areas.

The evidence would justify such a finding but would require plaintiff to bear all of the burden of the apparent misunder-

standing. Fairness requires that we try to "fine tune" justice more than that. If defendant had known, which he should have known, that the ISO requirements would mandate the alarm system being in all parts of the facility, he would have said so at that initial meeting and obviously a more extensive and commensurately more expensive system would have been contemplated by both parties. Because he did not know that and because plaintiff indicated the system would be only in the warehouse portion, it was done in that fashion. It would seem to me that to now award plaintiff, on the basis of the evidence, the cost of installing the system in the nonwarehouse portions would be to give the plaintiff not the "benefit of his barg[a]in" but rather an unjustifiable windfall by requiring the defendant to provide materials and labor for an expanded system never mutually contemplated by the parties.

But because the defendant should have known that the more extensive system would be required, I think it is fair that he pay the difference in ultimate insurance costs during the time the more extensive system was not installed. Interestingly, at the time of trial, plaintiff had never completed the system.

Law requiring defendant to bear the cost of extending the system into the non-warehouse portions of the facility would be law requiring an unfair result. Accordingly, the motion to alter or amend judgment is denied.

■■■ The starting point for our analysis of this written purchase order agreement is with the document itself.

The determination of the parties' intent is our prime focus in construing or interpreting a contract. *State v. Moncrief,* 720 P.2d 470 (Wyo.1986); *Amoco Production Co. v. Stauffer Chemical Co. of Wyoming,* 612 P.2d 463 (Wyo.1980). "If an agreement is in writing and the lan-

---

**2.** Part of this cost included attorney's fees which were specifically requested and were claimed to total $6,931.50 at the beginning of trial.

**3.** What we would do if a cross-appeal had been filed by High Plains is purely conjectural.

guage is clear and unambiguous, the intention is to be secured from the words of the agreement." *Nelson v. Nelson,* 740 P.2d 939, 940 (Wyo.1987). * * * Contract construction and interpretation are done by the court as a matter of law. *Amoco Production Co.,* 612 P.2d at 465; *Bulis v. Wells,* 565 P.2d 487 (Wyo.1977).

If the contract is ambiguous, the intent of the parties may be determined by resort to extrinsic evidence. *Rouse [v. Munroe],* 658 P.2d [74] at 78 [(Wyo.1983)]; *Mountain Fuel Supply Co. v. Central Engineering & Equipment Co.,* 611 P.2d 863 (Wyo.1980). An ambiguous contract is one "which is obscure in its meaning because of indefiniteness of expression or because of a double meaning being present." *Farr [v. Link],* 746 P.2d [431] at 433 [(Wyo.1987)]. *See also Bulis,* 565 P.2d at 490. The existence of ambiguity is a question of law. *Hensley v. Williams,* 726 P.2d 90 (Wyo.1986); *Amoco Production Co.,* 612 P.2d at 465.

*True Oil Co. v. Sinclair Oil Corp.,* 771 P.2d 781, 790, (Wyo.1989). When the job location specifying "warehouse" is read in conjunction with the I.S.O. requirements which required that the entire facility be equipped, an ambiguity is presented. Therefore, resort to parol evidence is proper to ascertain the meaning of this contract. *See also Cordova v. Gosar,* 719 P.2d 625, 641 (Wyo.1986), where parol evidence was properly allowed when mutual mistake occurred. This record clearly shows that neither party knew nor anticipated that an entire facility installation would be required to meet the I.S.O. requirements when the arrangements for the warehouse fire alarm system was contracted. Intent of the parties as to the scope of the contract is the determinate for their mutual rights and obligations. *Freese Leasing, Inc. v. Union Trust and Sav. Bank, Stanwood,* 253 N.W.2d 921 (Iowa 1977). While

extensive testimony was presented which created a factual conflict as to whether Johnson Storage's agent specified the office area to be included in the bid price, it obviously was neither stated in the document nor done in the work. We defer to the district court's decision because no abuse of discretion has been shown resulting from the issues of fact addressed. *See Anderson Excavating and Wrecking Co. v. Certified Welding Corp.,* 769 P.2d 887 (Wyo.1988). There is evidentiary support for the decision rendered. *Pancratz Co., Inc. v. Kloefkorn–Ballard Construction/Development, Inc.,* 720 P.2d 906 (Wyo.1986).

Within the conflict of evident decision presented, we affirm the district court's factual conclusion that there was no contractually adopted intent between the parties to install the alarm system in the entire facility.[4] Consequently, Johnson Storage is not entitled to a reversal of the judgment to permit claim for additional damages.

Affirmed.

---

4. It is also totally conjectural to guess what Johnson Storage would have decided if the bid had been first submitted for the entire building with the price tag of $10,675 instead of $4,675. We agree with the district court that the contractor did not "intentionally" agree to do what he did not agree to do; provide a $10,675 plus

job for $4,675. The warehouse installation is undoubtedly of value by providing increased protection from fire even though a differential in fire insurance rates may not be achievable until an additional fire protection system for the balance of the facility is installed.