**Thomas A. SKEOCH, Appellant (Defendant),**

v.

**ELECTRI–CENTER, a Wyoming corporation, Appellee (Plaintiff).**

No. 89–60.

Supreme Court of Wyoming.

July 27, 1989.

Floyd R. King of King & King, Jackson, for appellant.

Frank Hess and Juline Christofferson, Jackson, for appellee.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Justice.

An inflation index rent escalator clause is presented in this written lease interpretation controversy. The trial court ruled for appellee/tenant and awarded judgment for excess rental charges by applying the Wyoming Cost of Living Index instead of the United States Consumer Price Index which had been used by the building owner. We affirm.

Appellate issues are described as:

1. Which index should have been issued; and

2. If the state index is used, did the trial court error in adaptation of the dates of the base period?

In 1979, appellant Thomas A. Skeoch (landlord) entered into a ten-year term written lease for a store facility with appellee Electri–Center (tenant). The stated rent was $1,500 per month with this rental adjustment clause:

> At the end of each two year period, from the date of this Lease, the rental shall be adjusted to provide for a rate per annum equal to $18,000.00 plus such additional amount, if any, as shall be sufficient to give the Lessor for each lease year a total net rent equal to the purchasing power of $18,000.00 during January, 1979. Within thirty (30) days after the publication and issuance thereof, Lessor shall deliver to the Tenant a copy of the Consumer Price Index, hereinafter called the index, for the State of Wyoming, compiled by the Department of Labor and Statistics of the State of Wyoming, and shall give the Tenant notice of the rent increase, if any, to be in effect for the following two year period. Pending the determination of the additional

amount, if any, to be paid by the Tenant, the Tenant shall continue to pay the net rent at the rate of $1,500.00 per month, or such additional amount as determined by prior adjustments, and when the additional amount has been determined, the Tenant, on the first day of the month immediately following the new computation, shall pay to the Lessor such amount due from January 1 of the lease year to the date of such computation. If at any time required for the determination of the additional rent the Department of Labor and Statistics does not publish a Cost of Living Index, the parties shall use such other index as is then generally recognized and accepted for similar determinations of purchasing power.

From the date of initiation of possession in 1979 until 1987, landlord biannually notices cost of living escalation rent increases, which billings tenant then paid monthly for the next two years. In 1987, tenant learned that the index being applied was the United States Consumer Price Index (federal index) and not the Wyoming Cost of Living Index (state index). The record establishes that the contractually described state index had been, until 1978, compiled by the Department of Labor and Statistics for the State of Wyoming, which function had then been transferred to the Wyoming Department of Administration and Fiscal Control (DAFC), Division of Research and Statistics. By reasoning that the Department of Labor and Statistics for the State of Wyoming no longer published an index, landlord elected to apply the federal index. The index differences permitted collection of an extra $12,439.94 by using the federal index, which sum defines the scope of this litigation.

■ With considerable detail and resourcefulness, landlord argues that the state index is less reliable, the lease was ambiguous in provisions and his selection of the federal index was justified with discontinuance of the Department of Labor and Statistic's compilation. Point is also made that tenant did not object until June 1987 so that any refund should not exceed a two year last adjustment period computation.

The trial court in answering landlord's contention and ruling for tenant in decision letter found:

2. That paragraph 7 of the Lease Agreement between the parties (Plaintiff's Exhibit 2) calls for rental adjustment to be based upon "the consumer price index ... for the State of Wyoming, compiled by the Department of Labor and Statistics of the State of Wyoming."

3. That the State of Wyoming publishes the [sic] "The Wyoming Cost of Living Index" though responsibility for such publication has been changed from the State Department of Labor and Statistics to the State Department of Administration and Fiscal Control Statistics Research Division.

4. That the State of Wyoming publication should have been the index used to adjust the rentals under paragraph 7 of the Lease, not the Consumer Price Index as published by the United States Government.

5. That the testimony of witness Simmons set forth three different methods of calculation of overpayments and the Court finds that the calculations as set forth in Plaintiff's Exhibit 7 represent the appropriate computations.

Under our frequently stated standard of review, we discern substantial and sufficient evidence to sustain that decision.

"Our rule is that where the sufficiency of evidence is an issue we uphold the judgment if there is evidence to support it, and in so doing we look only to the evidence submitted by the prevailing party and give to it every favorable inference which may be drawn therefrom, without considering any contrary evidence."

*Smithco Engineering, Inc. v. International Fabricators, Inc.*, 775 P.2d 1011, 1015 (Wyo.1989) (No. 88–66, decided 6/16/89)

(quoting *Hance v. Straatsma*, 721 P.2d 575, 578 (Wyo.1986)).

The evidence in the case illuminates different perspectives which might exist between the state index which is derived from shopper's identification of price changes within the state and the alternatively constructed geographical expanded model used by the federal government for its index. The judiciary need not be called to select the more accurate, if that might be possible, by comparison of the different methodology used in compilation, since the parties made the decision in the lease to use the state index. That index, originally prepared by the Department of Labor and Statistics of the State of Wyoming, was proven to be the same index which, by state government reorganization in 1978, was transferred to DAFC. That 1978 reorganization was apparently unknown to the drafters of the lease when the lease document was prepared in 1979.

No error is found in the decision of the trial court to conclude that usage of that state index was provided by terms of the lease and should have been followed in computation by the landlord. Although erroneously described, the index was easily identified and no basic ambiguity results.[1] A determination whether an ambiguity exists is a decision made as a matter of law by the court. *Kelliher v. Herman*, 701 P.2d 1157 (Wyo.1985). Furthermore, landlord provided no evidence that the basic method in state index compilation occurred to create an injustice in application. The system used by the state agency did not change. The finite difference as reflected by trial evidence was that the federal index escalated faster during the compilation period because the state index was more geographically specific. This was not a nonexistent index case; the Wyoming index involved a change of agency for the preparation of a continued index. The trial court consequently utilized the same index that had been negotiated. *State v. Pennzoil Co.*, 752 P.2d 975 (Wyo.1988). Consequently, the cited case of *Seattle-First Nat.*

*Bank v. Earl*, 17 Wash.App. 830, 565 P.2d 1215 (1977) is inapplicable.

■ The next issue is taken with application of any overpayment award to the entire lease period and not just the last two years. This contention is answered by tenant in asserting that the failure of the landlord to follow the terms of the lease by "deliver[ing] to the Tenant a copy of the Consumer Price Index," excused inaction when notice of the switched methodology had not been provided or a copy of any index given. Tenant argues that failure of the landlord to advise of adaptation of the federal index or to supply a copy with the notice of rent increase justified a claim for refund for the entire period when the contractually required notice of the index had not been provided. In judgment decision, the trial court adopted this argument and this court has no basis in contractual interpretation of laches, estoppel or waiver theories which requires reversal. Tenant's lack of knowledge and landlord's lack of notice abjures laches or waiver. *See Moncrief v. Sohio Petroleum Co.*, 775 P.2d 1021 (Wyo. 1989) (Nos. 88–87 and 88–88, decided 6/16/89); *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93 (Wyo.1984); and *Murphy v. Stevens*, 645 P.2d 82 (Wyo. 1982).

Laches is a form of equitable estoppel based on an unreasonable delay by a party in asserting a right. The party asserting equitable estoppel as a defense must show that he lacked knowledge of the facts or was without the means of discovering them. The party asserting laches or equitable estoppel must also show that he relied upon the plaintiff's actions and changed his position in reliance thereon to his prejudice. *" ' * * * Unless the delay has worked injury, prejudice or disadvantage to the defendants or others adversely interested, it is not of itself laches. * * * ' " Hartnett v. Jones*, Wyo., 629 P.2d 1357, 1364 (1981).

The burden is on the one who asserts laches to prove prejudice.

---

1. The record reflects that the drafter of the lease agreement was a representative of the landlord.

*Murphy,* 645 P.2d at 91.[2]

█ The third argument has a more perplexing content. The refined computation prepared by tenant which was adopted by the trial court was based on a first quarter of the year to first quarter of the third year calculation. Landlord contends that the base comparison period should have been either by the last quarter of the year so that the escalation is effective for change from January 1st to January 1st or only for January. The latter contention would deny use of the state index which is only computed on a quarterly basis, while the federal index has a monthly publication.[3] Initially, the lease was intended to commence with a January date, but occupancy delays in remodeling required a later execution and delayed signing until March 6, 1979 for a possession date of April 1. The lease then finally expired March 31, 1989.

The parties agree that the state index was only published quarterly. With that factual component established, we find no error in the trial court decision to accept the computation based on a comparison between the first quarter just before the term commenced with the quarter that expired before the new adjustment would be made two years later. The factual conclusion of the trial court in determining the base point for computation was properly founded in logic and the written contractual terms. *Johnson Storage & Moving Co. v. Victory, Inc.,* 774 P.2d 636 (Wyo.1989).

Affirmed.

*Goodman v. Kelly,* 390 P.2d 244 (Wyo.1964).

2. In text as stated in the brief, it is questionable whether landlord really argued laches, waiver or estoppel directly, but rather argued that any refund was limited to a two-year period since "previous rent adjustments had been accepted and paid." No case authority was cited on laches or waiver. *E.C. Cates Agency, Inc. v. Barbe,* 764 P.2d 274 (Wyo.1988).

3. The difference shown between tenant's exhibit 7 and exhibit 6 apparently totals $1,987.28; $12,738.72 compared to $10,751.44. If the second quarter was used, the overpayment totaled about $18,000.