**WOODS PETROLEUM CORPORATION, Appellant (Plaintiff),**

v.

**Peter HUMMEL and Frank G. Wells, Appellees (Defendants).**

**No. 89–38.**

Supreme Court of Wyoming.

Dec. 22, 1989.

Neil J. Short, Casper, for appellant.

Russell K. Bean, a Member of the Wyoming State Bar, and Lee F. Sachnoff of Baker & Hostetler, Denver, Colo., for appellees.

Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

MACY, Justice.

This is an appeal from a summary judgment in favor of Appellees Peter Hummel and Frank G. Wells, denying the claim of Appellant Woods Petroleum Corporation for underbilled expenses of drilling, completing, and operating an oil well.

We affirm.

The issues, as framed by Woods Petroleum Corporation and adopted by Hummel and Wells, are as follows:

1. Whether the District Court erred in issuing Summary Judgment by interpreting the COPAS Accounting Procedure without relying on industry usage and practice and specific accounting interpretation.

2. Whether the District Court erred in issuing Summary Judgment where expert testimony is necessary to interpret specific contractual provisions.

3. Whether the District Court erred in issuing Summary Judgment where the clear language of the contractual provisions provided that Defendants/Appellees must pay their proportionate share of the costs attributable to the subject well.

In 1977, Woods Petroleum Corporation and Hummel entered into an agreement for the development of an oil well in Campbell County, in which Hummel received a one-third nonoperating working interest. The agreement was subject to a model form operating agreement executed by Woods Petroleum Corporation, as operator, and Davis Oil Company and W.A. Moncrief, as

*of, or Factors to be Considered in Evaluating, Eyewitness Identification Testimony—State Cases*, 23 A.L.R.4th 1089 (1983).

nonoperators.[1] The model form operating agreement incorporated a Council of Petroleum Accountants Societies of North America (COPAS) Accounting Procedure as Exhibit "C". Hummel later sold part of his interest to Wells. Paragraph 4 of the COPAS Accounting Procedure states in part:

Payment of any such bills shall not prejudice the right of any Non–Operator to protest or question the correctness thereof; provided however, all bills and statements rendered to Non–Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month period a Non–Operator takes written exception thereto and makes claim on Operator for adjustment. No adjustment favorable to Operator shall be made unless it is made within the same prescribed period.

From January 1978 through November 1984, Woods Petroleum Corporation's invoices for Hummel's expenses totaled $275,501.03. In December 1987, Woods Petroleum Corporation claimed it had billed Hummel for one-fourth instead of one-third of the expenses and sent an additional invoice to Hummel for $91,833.33.

Woods Petroleum Corporation brought suit in January 1988 to recover the amount of the underbilling. Hummel and Wells moved for summary judgment on the ground that Woods Petroleum Corporation was contractually barred from bringing the suit by Paragraph 4 of the COPAS Accounting Procedure. For purposes of their motion, they accepted as true the contention that Woods Petroleum Corporation had underbilled them for expenses.

The trial court found the COPAS Accounting Procedure required that the claim be brought within twenty-four months from the end of the calendar year during which Woods Petroleum Corporation originally sent the bill. Since Woods Petroleum Corporation attempted to collect the underbilled amount more than twenty-four

months later, the court held that Woods Petroleum Corporation was contractually barred from bringing the suit and entered judgment in favor of Hummel and Wells.

A proper grant of summary judgment requires the dual findings that there are no genuine issues of material fact and that the prevailing party is entitled to judgment as a matter of law. *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1*, 763 P.2d 1255 (Wyo. 1988). The parties do not dispute the facts that Woods Petroleum Corporation underbilled Hummel and Wells by $91,833.33 and that, thirty-six months following the end of the calendar year when the last billing was made, Woods Petroleum Corporation attempted to collect that amount. Thus, the only issue remaining is the interpretation of the limitation language contained in Paragraph 4 of the COPAS Accounting Procedure.

Our rules of contract construction are well established:

The determination of the parties' intent is our prime focus in construing or interpreting a contract. "If an agreement is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the agreement." When the language is clear and unambiguous, the writing as a whole should be considered, taking into account relationships between various parts. Contract construction and interpretation are done by the court as a matter of law.

*True Oil Company v. Sinclair Oil Corporation*, 771 P.2d 781, 790 (Wyo.1989) (citations omitted) (quoting *Nelson v. Nelson*, 740 P.2d 939, 940 (Wyo.1987)).

Woods Petroleum Corporation contends that Paragraph 4 of the COPAS Accounting Procedure was ambiguous in its use of the word "adjustment." The COPAS Accounting Procedure contained definitions for a number of terms, but "adjustment" was not among those terms defined. The plain meaning of this term is: "[A] settlement of a claim or debt in a case in which the amount involved is uncertain or in

---

**1.** The model form operating agreement was an American Association of Petroleum Landmen Form 610, titled "Model Form Operating Agreement—1956."

which full payment is not made." Webster's Third New International Dictionary 27 (1961). If the parties intended for this term to have some other meaning, the contract should have defined it. *See State Farm Fire and Casualty Company v. Paulson,* 756 P.2d 764 (Wyo.1988). Paragraph 4 was clear and unambiguous. Its purpose was to provide

> the Non-operator with a method to pay his bills timely, without a detailed analysis of their accuracy, and yet preserve his rights to collect any over-payment. It also implies a Statute of Limitations in providing that two years after the end of a calendar year, the transactions of that year shall be final with a conclusive presumption that the bills and statements were true and correct. After this period, Operator may make no adjustment favorable to him, and Non-operator can make no claim on Operator unless there has been a written exception and claim for adjustment during the period.

Dutton, *Accounting Procedures: Contracts or Controversies?,* 19 Rocky Mtn. Min.L.Inst. 117, 123 (1974).

Consideration of the entire writing does not affect our interpretation. Paragraph 8 of the Operating Agreement, titled "Costs and Expenses," stated in pertinent part:

> Except as herein otherwise specifically provided, Operator shall promptly pay and discharge all costs and expenses incurred in the development and operation of the Unit Area pursuant to this agreement and shall charge each of the parties hereto with their respective proportionate shares upon the cost and expense basis provided in the Accounting Procedure attached hereto and marked Exhibit "C". If any provision of Exhibit "C" should be inconsistent with any provision contained in the body of this agreement,

the provisions in the body of this agreement shall prevail.

Woods Petroleum Corporation failed in its brief to point out anything in the Operating Agreement which was inconsistent or which should have prevailed over Paragraph 4. Likewise, our examination of the entire writing reveals nothing which would cause us to reach any other conclusion than that Woods Petroleum Corporation is barred from attempting to collect the amount which it underbilled Hummel and Wells.

Finally, Woods Petroleum Corporation contends that this case was inappropriate for a summary judgment motion because each side had an expert witness available to give his opinion as to the meaning of the agreement. The meaning of the contract is clear, and the court was correct in interpreting that meaning as a matter of law without resorting to opinion evidence or any other extrinsic evidence. *See Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595 (Wyo. 1989); and *Farrell v. Hursh Agency, Inc.,* 713 P.2d 1174 (Wyo.1986).

Paragraph 4 of the COPAS Accounting Procedure allowed a specified time period in which Woods Petroleum Corporation could correct any billing errors. Woods Petroleum Corporation's failure to act within that time period precludes it from attempting to correct those errors now. The trial court correctly awarded summary judgment in favor of Hummel and Wells.

Affirmed.