**METROPOLITAN MORTGAGE & SECURITIES CO., INC.,**
Appellant (Plaintiff),

v.

**Charles P. BELGARDE, d/b/a Belgarde Enterprises, Appellee (Defendant).**

No. 89–253.

Supreme Court of Wyoming.

Aug. 27, 1991.

Julie Nye Tiedeken, McDaniel & Tiedeken Law Offices, Cheyenne, for appellant.

Donald J. Rissler, Brown, Raymond & Rissler, P.C., Casper, for appellee.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

The problem posed in this case is whether the parties to an installment land contract intended to enter into a bilateral or a unilateral agreement. The trial court examined the instrument, found it to be unambiguous, and concluded that it reflected an offer that could be accepted only by making the payments required by the instrument. The buyer, Charles P. Belgarde (Belgarde), then was awarded a summary judgment because the trial court ruled that the only remedy available to the seller upon the failure of the buyer to make payments under the instrument was to retake the property. The seller's assignee, Metropolitan Mortgage and Securities Co., Inc., (Metropolitan) had sought specific performance of the installment land contract as well as damages for past due payments. Given the language of the instrument and potential varying interpretations of that language, we conclude that the instrument was ambiguous and reverse the summary judgment because a genuine issue of material fact exists as to the intention of the parties. We remand the case to the trial court to resolve that issue of fact at a trial on the merits.

Metropolitan, in its Brief of Appellant, states the issues to be:

"1.  Did the trial court err in ruling that specific performance was not an appropriate seller's remedy in this case?

"2.  Did the trial court err in ruling that the seller was limited to the remedy of forfeiting the contract and taking the property back?"

* Chief Justice at time of oral argument.

In his Appellee's Brief, Belgarde adopts the issues as stated by Metropolitan.

In May of 1982, Dale and Carolyn Schilling entered into an "Agreement for Warranty Deed" to transfer ownership of some property in Gillette to Belgarde for $495,000. That instrument provides in part:

"IN CONSIDERATION of the sum of $5,000.00 paid by Buyers to Sellers, the receipt and sufficiency of which is hereby acknowledged as part of the purchase money for the premises hereinafter described, the Sellers hereby agree, promise, and covenant to convey a fee simple title to Buyers, by a good and sufficient Warranty Deed, the following described land situate in Campbell County, State of Wyoming * * * under the following terms and conditions:

"I.

"PURCHASE PRICE

"The total sale price shall be the sum of $495,000.00, including all improvements now on said property, and any other such improvements as may hereinafter be placed on said premises by Buyers, the latter to be held as additional security in case of failure to fulfill the covenants of this contract.

"Buyers shall pay to Sellers the sum of $6,041.81 down payment as follows: $5,000.00 presently held by Sellers and $1,041.81 to be paid on the signing of this agreement. Buyers will assume a note in the amount of $94,000 from Sellers to Herbert R. Stollorz and Carol A. Stollorz, * * *. This note shall be assumed and payable prior to May 15, 1982.

"The remaining $394,958.19 shall be paid as follows: An additional $50,000.00 cash plus 14% interest per annum from May 1, 1982, shall be paid on July 1, 1983. The Buyers also agree to assume the payments under the existing Agreement for Deed in the amount of $144,958.19 payable at the rate of $2,312.71 per month, including interest at 10% per annum, with the entire balance due in approximately 7½ years.

"The balance in the amount of $200,000.00 shall be due and payable in monthly payments of $2,500.00 per month, including interest at 14% per annum from May 1, 1982, with the entire balance due in ten (10) years."

The deed was to be held in escrow until Belgarde performed all the conditions of the contract. The agreement also listed those occurrences that would constitute a default on the buyers' part and stated:

"In the event of such a default Sellers, *at their option*, may declare this agreement null and void and may, with or without process of law, take immediate possession of the said premises and regard any persons thereon as guilty of forcible detainer; hold and retain all monies paid hereunder as liquidated damages, rent, and compensation for the use and benefit of the property. Sellers shall be entitled to any additional damages incurred as a result of Buyers' holding over.

"In the event Sellers declare this agreement null and void in accordance with the terms hereof, the escrow agent shall deliver all of said instruments to Sellers upon the receipt of an affidavit of default for reasons hereinabove provided." (Emphasis added.)

The Schillings assigned their interests in the land and the "Agreement for Warranty Deed" to Metropolitan in 1986. At the time of the assignment, approximately $190,761 remained due from Belgarde to complete the transaction. In August of 1988, Belgarde stopped making the monthly payments. In February of 1989, Metropolitan's counsel sent notice to Belgarde that he was in default, owing at that time about $18,000 and, in March of 1989, Metropolitan filed suit alleging that Belgarde was in default. Metropolitan claimed that it had no speedy and adequate remedy at law and was entitled to specific performance of the "Agreement for Warranty Deed" as well as damages for past due payments.

Both parties subsequently filed motions for summary judgment. Metropolitan argued that forfeiture was not its only reme-

dy for default and that it should be able to avail itself of specific performance of the contract and seek damages for past due payments. Belgarde argued that Metropolitan was limited to pursuing the remedy specifically provided in the agreement and that Metropolitan should close out the escrow, retain all payments as liquidated damages, and retake the land.

The trial court denied Metropolitan's motion on the specific performance issue, but requested additional briefing before considering Belgarde's motion and Metropolitan's damage claim. Belgarde filed a second motion for summary judgment asking for a declaration that Metropolitan's remedies were limited to those under the agreement, an action in ejectment, or an action in strict foreclosure. A hearing followed in which the court granted Belgarde's motion for summary judgment, stating that "taking the property is [Metropolitan's] only remedy." The court subsequently issued an order reflecting this determination.

In announcing his decision from the bench, the judge said:

"Having cleared those two things up, I want to turn to my analysis. Before I start, I want to tell you that, and I guess it's merely pointing out the obvious, I'm not free to do what I think is fair and I'm not free to do what I would like. I'm bound to follow the law. In this case, I think what the parties intended was that the buyers were going to buy this property and they promised to pay the money, and the sellers were satisfied with those promises. I think what would be fair under the circumstances is to make Belgarde live with what probably everyone thought their obligations were at the time. However, I have to deal not with what I think the parties probably intended but what they, in fact, said.

"I'm looking at the agreement for warranty deed, and what it says is that the buyers—or, I mean, the sellers promise to convey the real property under the following terms and conditions. Then it goes into the recital of the purchase price and says what the buyers' obligations are. What that says to me is that the sellers agree to perform if the buyers perform. They—the buyers have not undertaken, at least by a plain reading of the language of the statute (sic) [instrument], an obligation to do that, to an independent obligation, an independent promise to pay. They have an obligation if they want the land conveyed to them, so it's a conditional sales contract.

"Looking at the remedies, it does provide for default, and it provides a remedy in event of default. Now, the sellers, at their option, can declare the agreement null and void. They've elected not to do that, and if they elect not to declare it null and void, unless there's an independent promise by the buyers to do something, I don't know what their remedy is. It's not clear within the terms of the contract, and I think under existing law there's no independent obligation on the part of the buyers to do anything. They simply don't have the right to have the real property conveyed to them if they fail to keep up their end of the bargain.

"So that is my legal interpretation of that instrument. Necessarily, from that interpretation flows the conclusion that the seller's remedy is to take the property back, period. So while I'm somewhat dismayed that that's—that's the result because I don't think it's a fair one, nevertheless, that is, I think, what the parties agreed to and the extent of their obligation."

The question of the intention of the original parties, as in all property disputes involving contracts, is critical to the resolution of this dispute. *Johnson Storage and Moving Co. v. Victory, Inc.*, 774 P.2d 636 (Wyo.1989); *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781 (Wyo.1989). *See U.S. through Farmers Home Admin. v. Redland*, 695 P.2d 1031 (Wyo.1985). In considering the issues presented by these parties, we recall that we have analyzed the rights of parties to transactions involving sales of land in this way:

"A further and more basic question, however, is presented by this case. The question, which was neither reached by the district court nor directly briefed by the parties, is whether the transaction at

issue represents an installment land contract or a conveyance with a mortgage back. The significance of this determination can readily be seen. If the agreement represents a conveyance with a mortgage back, the forfeiture provision was unenforceable. *See generally* E. Rudolph, *The Wyoming Law of Real Mortgages* at 147 (1969) * * *. A mortgagee's only remedy upon mortgage default is foreclosure and public sale, either by power of sale pursuant to Wyo.Stat. §§ 34–4–101 to –113 (1977) or by judicial sale in accordance with Wyo.Stat. §§ 1–18–101 to –112 (1977). *L Slash X Cattle Company, Inc. v. Texaco, Inc.,* 623 P.2d 764 (Wyo.1981). *See also Marple [v. Wyoming Production Credit Association],* 750 P.2d [1315] at 1318, n. 2 [(Wyo. 1988)] (in case of equitable mortgage, foreclosure was the remedy—not quiet title). * * * Conversely, when a transaction is accomplished by means of an installment land contract, the seller, while often able to enforce a forfeiture provision, is not entitled to a deficiency. *Baldwin v. McDonald,* 24 Wyo. 108, 156 P. 27 (1916).

"In an installment land contract, the seller agrees to accept payments from the purchaser, generally by a series of installments over time, until the purchase price as established by the contract has been paid. When the contract price has been paid, the seller must deliver a deed to the purchaser. *Insurance Company of North America v. Ventling,* 771 P.2d 388 (Wyo.1989); E. Rudolph, *supra* at 147–48. Prior to the final installment payment and delivery of the deed, the seller retains legal title. *Id.; Baldwin,* 156 P. 27; 7 R. Powell, *The Law of Real Property* ¶ 938.20[1] (1989). Although the purchaser usually is given the right to possession, his interest in an installment land contract is equitable, not legal. *Insurance Company of North America,* 771 P.2d 388; *Baldwin,* 156 P. 27.

"The fundamental difference distinguishing a mortgage from an installment land contract, at least in states applying a lien theory to mortgages, is that, in a mortgage, fee title has vested in the purchaser/mortgagor. *Marple,* 750 P.2d 1315; *Baldwin,* 156 P. 27. When a question as to the nature of the transaction arises, however, and in order for a court to find a mortgage, it must be shown that the parties intended a mortgage transaction rather than an installment land contract; i.e., there must have been an intent to create a security, as construed from the written agreement and the surrounding circumstances. *Angus Hunt Ranch, Inc. v. Reb, Inc.,* 577 P.2d 645 (Wyo. 1978); *Baldwin,* 156 P. 27. *See also* 7 R. Powell, *supra,* ¶ 938.20[3] at 84D–13 (installment land contract not the functional equivalent of a mortgage absent clear proof that parties intended to create a mortgagor-mortgagee relationship (citing *Angus Hunt Ranch, Inc.*))." *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 600–601 (Wyo.1989) (footnote omitted).

In an early case, this court discussed the doctrine of equitable conversion, a principle that is not invoked with respect to a unilateral contract, which is how we have characterized an installment land contract, and said:

" * * * This rule, for many purposes, determines in equity the rights of the parties and others who have succeeded to the interest of either party by transfer or otherwise; and the rule is itself but the consequence of the familiar doctrine of courts of equity that for many purposes things agreed to be done are treated as if they were actually done, and necessarily refers to a valid contract—one binding upon both parties, containing not only an obligation on the part of the vendor to convey upon payment of the purchase price, but an obligation on the part of the vendee to purchase and pay the purchase money, and has no reference to a mere option to purchase or to complete the purchase. 3 Pomeroy's Eq. Juris. (3rd Ed.) §§ 1260, 1261, and note; Lysaght v. Edwards, 2 L. R. Ch. Div. 499; *Milwaukee v. Milwaukee County,* 95 Wis. 42, 69 N.W. 796; *People v. Shearer,* 30 Cal. 645, 648. It is evident that, if the purchaser is not obligated to pay the purchase money, the vendor cannot be treat-

ed even in equity as the owner of the money, and therefore, in such case, there would be no ground for applying the doctrine of equitable conversion." *Olds v. Little Horse Creek Cattle Company*, 22 Wyo. 336, 346, 140 P. 1004, 1007 (1914).

■ Like the parties in *Cliff & Co., Ltd.*, the parties in this case, although implicitly broaching the subject, have not sufficiently addressed the language in the "Agreement for Warranty Deed" to indicate whether the actual intention of the original parties to the agreement was that it establish an installment land contract characterized by an obligation unilaterally placed on the seller only upon the occurrence of certain nonmandatory acts by the buyer or whether it was to be a bilateral agreement equivalent to a mortgage, either in law or equity, resulting in the property providing a security interest against a binding debt. See *Angus Hunt Ranch, Inc. v. Reb, Inc.*, 577 P.2d 645 (Wyo.1978). If the latter situation pertained, a deficiency judgment could be appropriate if it were justified by the circumstances.

The trial judge's conclusion was that the instrument he was construing imposed no duty upon Belgarde to make the payments provided for in the instrument. Although admittedly troubled by the result, the judge ruled that this left Metropolitan with no remedy other than forfeiture. Metropolitan, as others might, reads the contract differently, treating it as a bilateral contract with mutual obligations to the end that the seller would have available the full panoply of remedies in law and equity.

These parties chiefly question whether an installment land contract is limited entirely to the remedy of forfeiture as a matter of law. The arguments presented implicitly assume the existence of a bilateral installment land contract. The usual obligations of a bilateral contract are different from those generally accepted with respect to a contract for deed. While the debated issue is intriguing, the question cannot, and need not, be resolved under the circumstances of this case without first determining the factual issue involving the intentions of the parties. *Cf., Olds* (doctrine of equitable conversion implies buyer's obligation under contract for deed). Consequently, we focus on that single aspect.

It is apparent from the circumstances that the property in dispute no longer is worth what is owed upon it. It follows that Metropolitan's claim is the functional equivalent of a demand for a deficiency judgment, a remedy normally found only in a mortgage situation. Belgarde's stance, on the other hand, hinges on the generally adopted view that forfeiture is the sole remedy under the normal construction of an installment land contract. Resolution of this divergence requires a factual determination as to whether the language of the parties was sufficient to create a contract binding on both parties. A bilateral contract is the predicate for any conclusion that the real intent, as the trial judge intimated, of the parties was to create a security interest in Metropolitan's predecessor that would justify a remedy alternative to forfeiture.

■ Our rule is that an ambiguity in a written instrument precludes the trial court from awarding a summary judgment because there is a genuine issue of material fact with respect to the intent of the parties. *Weaver v. Blue Cross–Blue Shield*, 609 P.2d 984 (Wyo.1980); *Meuse–Rhine–Ijssel Cattle Breeders of Canada, Ltd. v. Y–Tex Corporation*, 590 P.2d 1306 (Wyo. 1979). *See Centric Corp. v. Drake Bldg. Corporation*, 726 P.2d 1047 (Wyo.1986). It is only when there is no ambiguity in the instrument that summary judgment is appropriate in a contract case. *Wyoming Game and Fish Commission v. Mills Co.*, 701 P.2d 819 (Wyo.1985); *Kuehne v. Samedan Oil Corp.*, 626 P.2d 1035 (Wyo.1981); *Madison v. Marlatt*, 619 P.2d 708 (Wyo. 1980). Furthermore, we have said that the intent of the parties that the property transaction be a mortgage rather than an installment land contract is to be shown from their written agreement and the surrounding circumstances. *Angus; Baldwin v. McDonald*, 24 Wyo. 108, 156 P. 27 (1916).

The parties in this case appear to have different perceptions of the decision of the trial court. We are satisfied that the trial judge followed the foregoing precepts in concluding that the contract was unambiguous and that Belgarde was entitled to judgment as a matter of law. The judge simply treated the instrument as an offer subject to acceptance only through completion of an act by the purchaser (sometimes called a unilateral contract). The court ruled that the buyer's acceptance of the seller's offer could be accomplished only by the buyer making the payments provided for in the instrument. Since it was not a bilateral contract, however, it imposed no obligations upon the buyer.

What the judge overlooked is that the seller presented the instrument as a bilateral contract in this instance by seeking remedies different from forfeiture, and the court, as well, did not analyze the language of this court that expands the consideration of the parties' intent on this issue beyond the written agreement to a consideration of the surrounding circumstances. The "Agreement for Warranty Deed" is, therefore, subject to a different construction from that adopted by the trial court, and the diametrical views that are offered with respect to that instrument lend credence to a conclusion that it, in fact, is ambiguous. The trial judge read the language as providing only the method for accepting the offer to sell. The same language can be read as imposing a duty upon the buyer to make the payments that are provided. That duty is the essence of a bilateral contract. *Olds.*

Metropolitan also relies upon language in the contract that provides that in the event of default "Sellers, at their option, *may* declare this agreement null and void and *may*, with or without process of law, take immediate possession" of the property. (Emphasis added.) Metropolitan contends that this language recognizes an option to declare the agreement null and void and, by implication, provides that it may, in the alternative, enforce the contract. Belgarde argues that this language does nothing more than provide a right to declare a forfeiture and that is Metropolitan's only

option. He contends that, in the absence of a declaration of forfeiture, the contract remains in effect thus permitting him to cure any default. Neither party refers to the language in the instrument providing that improvements later made to the premises are "to be held *as additional security* in case of failure to fulfill the covenants of this contract." (Emphasis added.)

■ Belgarde does not account for the provision for liquidated damages found in the forfeiture clause. That could be perceived as evidencing his recognition that a bilateral contract was entered into that created a security interest in the property and established obligations on his part. Under a true unilateral contract, the concept normally applicable to an installment land contract because it provides for acceptance only through performance of the stated conditions, the offeree or buyer would be bound to no obligations whatsoever, including any duty to pay liquidated damages. Until he had accepted by paying according to the instrument, no contract existed. It was only an offer until the buyer had completely performed the conditions attached to the offer to sell. *Cf., Shellhart v. Axford,* 485 P.2d 1031 (Wyo.1971) (mutuality of obligation is a requirement for a contract). Belgarde's reliance on the forfeiture clause is a matter of concern, but that reliance avoids the argument that commencing performance might invoke a binding promise to completely perform. That question, however, is not before us in this case. We do emphasize that the possibility of a bilateral contract should not encourage those whose rights under a contract for the sale of land have been forfeited to seek the return of moneys paid on the defaulted contract. There are theories under which such a forfeiture is clearly justified, *See Bentzen v. H. N. Ranch, Inc.,* 78 Wyo. 158, 320 P.2d 440 (1958), and, indeed, the time to raise that question must be when the forfeiture is pursued.

■ It is obvious that reasonable minds can, and do, differ over what the parties intended when entering into the "Agreement for Warranty Deed." In a contract

case, that difference in interpretation constitutes the genuine issue of material fact that forecloses summary judgment. *Weaver; Meuse–Rhine–Ijssel. See Centric Corp.* The concomitance is that the other party seeks to enforce a contract that is no less ambiguous, and the factual issue of intent must first be submitted to the trier of fact before the pertinent rules of law may be applied. In arriving at that determination, the surrounding circumstances must be accounted for in a case involving an instrument such as this.

Our cases structure a presumption that an instrument such as this is a "unilateral contract" pursuant to which the seller is limited to forfeiture as a remedy, but they also recognize that a contrary intention can be established by either party. The claim of a contrary contention can first be raised by the seller simply by eschewing forfeiture as the remedy and seeking the alternative remedy of foreclosure followed by a deficiency. The question of the intention of the parties is squarely raised when the seller proceeds in that fashion and, in treating with that issue, the court must address both the written agreement and the surrounding circumstances. It is likely that the issue will require a trial in most cases in the absence of an admission by the purchaser that the remedy invoked by the seller is correct.

Conversely, the purchaser can assert this issue by bringing an action for relief if the seller proceeds to assert the remedy of forfeiture. In the absence of any admission by the seller, the claim that a bilateral contract is present would require a trial in most cases because of the necessity to consider the written agreement and the surrounding circumstances to discern intent. It appears that, once the question is raised, any presumption that favors an installment land contract can be rebutted by the party asserting a bilateral contract if that party can demonstrate an intent to create a mortgage.

We view our cases as manifesting a strong bias in favor of a trial on the issue of the intent of the parties, to be determined from their written agreement and the surrounding circumstances. We also are satisfied that the parties can draft agreements to settle the question. They have the opportunity, and the power, to specify in their agreement whether it is an installment land contract limiting the remedy to forfeiture or, in the alternative, whether it is intended to be a bilateral agreement invoking the doctrine of equitable conversion. If they choose to endeavor to keep their options open by not specifying the nature of their agreement, they should have no complaint about the necessity of a trial to settle the question of intent in accordance with this opinion.

The summary judgment is reversed and the case is remanded to the district court for trial.

URBIGKIT, C.J., files an opinion concurring in the result.

CARDINE and MACY, JJ., file dissenting opinions.

URBIGKIT, Chief Justice, concurring in the result.

I remain consistent in conclusion that the trial court decision should be reversed and that the agreement was both bilateral and unambiguous as stated in dissent by Justice MACY.

In disposition of the appeal, the trial court's decision has to be either affirmed or reversed, and, by concurrence in the result, I vote to reverse and remand to the trial court for further proceedings.

CARDINE, Justice, dissenting.

Metropolitan Mortgage and Securities Co., Inc. (Metropolitan), sued the buyer, Charles P. Belgarde, for specific performance of an installment land contract and damages for past due payments. Belgarde was granted summary judgment which held that Metropolitan's remedy on default was limited to retaking the property and retaining payments made as liquidated damages.

I would affirm the judgment of the trial court.

Metropolitan brings these issues:

"1. Did the trial court err in ruling that specific performance was not an appropriate seller's remedy in this case?

"2. Did the trial court err in ruling that the seller was limited to the remedy of forfeiting the contract and taking the property back?"

In May 1982, Dale and Carolyn Schilling entered into an "Agreement for Warranty Deed" to transfer ownership of property in Gillette to Belgarde for a total purchase price of $495,000. Belgarde paid $6,041.81 at closing and assumed a note for $94,000 that was in the sellers' names. An amount of $50,000 plus interest was due July 1983. Additionally, Belgarde assumed payments under the existing Agreement for Deed in the amount of $144,958.19. The remaining balance in the amount of $200,000 was to be paid in installments of $2,500 per month for ten years. A deed was to be held in escrow until Belgarde performed all the conditions of the contract. The Schillings assigned their interests in the land and the "Agreement for Warranty Deed" to Metropolitan in 1986. At the time of the assignment, approximately $190,761 was unpaid under the "Agreement for Warranty Deed."

The agreement provided with respect to default on the buyer's part:

"In the event of such a default Sellers, at their option, may declare this agreement null and void and may, with or without process of law, take immediate possession of the said premises and regard any persons thereon as guilty of forcible detainer; hold and retain all monies paid hereunder as liquidated damages, rent, and compensation for the use and benefit of the property. Sellers shall be entitled to any additional damages incurred as a result of Buyers' holding over.

"In the event Sellers declare this agreement null and void in accordance with the terms hereof, the escrow agent shall deliver all of said instruments to Sellers upon the receipt of an affidavit of default for reasons hereinabove provided."

During August 1988, Belgarde stopped making monthly payments. In February 1989, Metropolitan's counsel sent Belgarde notice of default claiming an amount then due and unpaid of $17,995.15. In March 1989, Metropolitan filed suit alleging Belgarde's default; that it had no speedy and adequate remedy at law; and was entitled to specific performance of the "Agreement for Warranty Deed," as well as damages for past due payments.

Both parties filed motions for summary judgment. Metropolitan claimed that forfeiture was not its only remedy for default and that it had a right to specific performance of the "Agreement for Warranty Deed" and damages for past due payments. Belgarde contended that Metropolitan was limited to the remedy specifically provided in the agreement, *i.e.*, that of closing the escrow, retaining all payments as liquidated damages, and retaking the land.

The trial court denied Metropolitan's motion on the specific performance issue but requested additional briefing before considering Belgarde's motion and Metropolitan's damage issue. A hearing followed in which the court granted Belgarde summary judgment, stating that "taking the property is [Metropolitan's] only remedy."

A grant of summary judgment is proper only when there is no genuine issue of material fact and the prevailing party is entitled to judgment as a matter of law. W.R.C.P. 56(c). Since no issue of material fact exists here, we concern ourselves only with the second prong of the requirement for a proper grant of summary judgment, *i.e.*, whether Belgarde was entitled to summary judgment as a matter of law. *Brazelton v. Jackson Drug Co.*, 796 P.2d 808 (Wyo.1990). Resolution of this case is a matter of contract interpretation, for which the rules are well established:

" 'The determination of the parties' intent is our prime focus in construing or interpreting a contract. "If an agreement is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the agreement." [*Nelson v. Nelson*, 740 P.2d 939, 940 (Wyo.1987).] When the language is clear and unambiguous, the writing as a whole should be considered, taking into account relationships be-

tween various parts. Contract construction and interpretation are done by the court as a matter of law.' " (citations omitted) *Woods Petroleum Corp. v. Hummel*, 784 P.2d 242, 243 (Wyo.1989) (quoting *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781, 790 (Wyo.1989)).

The "Agreement for Warranty Deed" is not ambiguous. The trial court correctly determined that the instrument effecting sale of this real estate was a contract for deed in its purest form. When selling real estate, where the down payment is small when compared to the total sale price, a seller will often insist on selling by contract for deed as in this case—the reason being that buyer has no real equity in the real estate because of the small down payment and seller should not be put to the burden of foreclosure, sale at fair market value, right of redemption, dispute over possession and rentals and the exposure associated therewith. Thus, where sale is by contract for deed, upon default, seller can, by affidavit of default, terminate the contract and retake possession of the real estate with no further exposure or proceedings of any kind. On the other hand, where buyer makes a substantial down payment, buyer may insist upon a deed transferring title with a mortgage back to seller to secure rights available in foreclosure and to protect his substantial equity. *See Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 601 (Wyo.1989) (explaining the differences between a mortgage and a contract for deed).

In this case, buyer paid $6,041.81 down at the time of purchase upon a total purchase price of $495,000. The contract for deed of the parties, rather than providing a "promise to pay," states that buyer "shall pay" and "will assume" existing debts. Upon default, sellers may, at their option, declare the agreement null and void and retake possession. In the circumstances of this case the words "shall pay" express a prerequisite to receipt of the warranty deed and "at their option" means seller can declare a default or not as it chooses.

In the absence of a specific provision for alternative remedies, where sale is by contract for deed or agreement for warranty deed, as in this case, such remedies do not exist. An additional reason that such remedies should not exist is that they may be unenforceable. For example, enforcement might involve foreclosure and a deficiency judgment, but a seller is not entitled to a deficiency when a buyer defaults under a contract for deed. *Cliff & Co., Ltd.*, 777 P.2d at 601. We should not impose a remedy we cannot enforce. *See* Restatement, Second, Contracts § 366 (1981). The agreement of the parties describes the remedy available as the trial court held.

I would affirm.

MACY, Justice, dissenting.

I agree with Justice Cardine in his dissent that the parties entered into an unambiguous bilateral contract. It is clear from reading the contract in its entirety that the buyer agreed to pay the seller in installments and, upon the buyer's failure to do so, the seller had the option to repossess the property. I part company with Justice Cardine, however, when he insists:

> In the absence of a specific provision for alternative remedies, where sale is by contract for deed or agreement for warranty deed, as in this case, such remedies do not exist.

At 877 (Cardine, J., dissenting). This is contrary to our holding in *Walters v. Michel*, 745 P.2d 913 (Wyo.1987). In *Walters*, the buyers argued the sellers could pursue only those remedies enumerated in the contract. We disagreed and ruled the sellers were not limited, in the absence of an "exclusive remedy" clause, to those contractual remedies enumerated in the real estate purchase agreement.[1] The contract at issue in the case at bar does not contain an "exclusive remedy" clause.

For additional support, see *Glacier Campground v. Wild Rivers, Inc.*, 182 Mont. 389, 597 P.2d 689 (1978). In *Glacier Campground*, the Montana Supreme

---

**1.** I recognize real estate purchase agreements and contracts for deed are directed at different time periods in the transaction. That fact, how- ever, does not necessarily dictate a different result.

Court, quoting an earlier Montana case, stated the general rule:

"It is the general rule that the clause of forfeiture in a contract of the sale does not operate to make the contract void, when there is a default on the part of the vendee, so as to terminate the liability of the vendee, but *the vendor may elect whether to declare a forfeiture or rely upon the liability of the vendee as fixed by the contract, and sue for the purchase price.*" (Emphasis added.)

*Id.* 597 P.2d at 696 (quoting *Alexander v. Wingett,* 63 Mont. 254, 259, 206 P. 1088, 1089 (1922)). The Montana Supreme Court went on to rule, "In the absence of a contractual provision expressly limiting the remedy or remedies available, a party may pursue any remedy which law or equity affords, as well as the remedy or remedies specified in the contract." *Id.* This Court has ruled, "[F]ailure to make payments, while constituting grounds for forfeiture of a conditional [installment land] contract, does not operate to terminate the contract absent appropriate notice to the nonperforming party." *Kost v. First National Bank of Greybull,* 684 P.2d 819, 823 (Wyo. 1984).

In this instance, it is the seller who must notify the buyer (the nonperforming party) if the contract is being forfeited. Instead of declaring a forfeiture, however, the seller has elected to keep the contract in force. Through the default notice, the seller informed the buyer it was not declaring a forfeiture and it would continue to enforce the contract with a lawsuit, if necessary.[2] The language, "at their option," suggests alternative remedies other than forfeiture were intended upon the buyer's default. I reject the notion a buyer can avoid liability by defaulting and forcing the seller to declare a forfeiture.

I would reverse and permit the seller to maintain successive actions against the buyer for the amount of unpaid installments and attorney fees. Because the contract lacks an acceleration clause, the seller

2. The contract, in detailing the purchase price, employs mandatory language directed at the buyer; e.g., "Buyers shall pay to Sellers." This language indicates that, as long as the seller

is not entitled to sue for the entire balance of the purchase price.

elects to keep the contract in force, the buyer has a duty to pay the installments when they are due.