# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 19

OCTOBER TERM, A.D. 2012

*February 14, 2013*

SHIRLEY R. CASE, an individual,

Appellant
(Plaintiff),

v.

SINK & RISE, INC., a Wyoming corporation; CALE CASE, an individual; GUION and DARLA NIGHTINGALE, individuals; and TANGEMANN BENEDICT CORP., a Wyoming corporation.

Appellees
(Defendants).

S-12-0111

*Appeal from the District Court of Fremont County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*
Glenn M. Ford, Wilson, WY; and Amy Wallace Potter, Jackson, WY. Argument by Mr. Ford.

*Representing Appellees:*
J. Denny Moffett of Moffett & Associates, P.C., and Heather Noble, Jackson, WY for Appellee Sink & Rise, Inc. Argument by Mr. Moffett.

Scott W. Meier, Lucas Buckley, and Marianne K. Shanor of Hathaway & Kunz, P.C., Cheyenne, WY for Appellees Cale Case, Guion and Darla Nightingale, and Tangemann Benedict Corp. Argument by Mr. Meier.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:** This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**HILL,** Justice.

[¶1]    This case involves a dispute over corporate action during a shareholder meeting of Appellee Sink & Rise, Inc., (Sink & Rise) a Wyoming corporation.  Appellee James Caleb Case (Cale Case) was the only shareholder present at the meeting.  He concluded that a quorum existed and thus voted on and passed several resolutions.  Cale Case also elected himself and another shareholder as the directors of the corporation, and replaced his estranged wife, Appellant Shirley Case, as the corporation's secretary.

[¶2]    Shirley Case took issue with her estranged husband's actions during the shareholder meeting and filed a complaint in district court to set aside the corporate action that occurred at the shareholder meeting.  After trial, the court held that joint stock held by Cale Case and Shirley Case, as husband and wife as tenants by the entirety with rights of survivorship, were "entitled to vote" during the shareholder meeting and could thus be counted for quorum purposes, although they were not voted to pass the resolutions.  Nevertheless, the district court concluded that the resolutions were passed with requisite authority and thus they were not set aside after trial.  This appeal followed.

### ISSUES

[¶3]    Shirley Case presents two issues for our consideration:

> 1. Did the trial court commit reversible error in finding that the transactions contemplated by Sink & Rise Shareholder Resolutions 1, 2, and 3 and Board of Director Resolutions 1, 2, and 3 were not void and ultra vires as directors' conflicting interest transactions under W. S. § 17-16-860, *et. seq.*?

> 2. Did the trial court commit reversible error in finding that the jointly held stock held by James Caleb Case and Shirley Case could be counted for purposes of a quorum of shareholders in the absence of either personal attendance or a proxy from both owners?

### FACTS

[¶4]    A May 24, 2011 shareholder meeting of Sink & Rise is central to this case.  Sink & Rise has 84 shares of voting, common stock outstanding.  There exists only one class of stock in the corporation, giving each stockholder the same voting rights.  The stock ownership in Sink & Rise is as follows:

Cale Case – 20 shares

Cale Case and Shirley Case, Husband and Wife with Rights
of Survivorship – 16 shares
Clarene Law, Trustee, Clarene Law Revocable Trust (4/4/89)
– 16 shares
Creed Law, Trustee, Creed Law Revocable Trust (4/4/89) –
16 shares
Guion Nightingale – 16 shares[1]

[¶5]    At the May 24, 2011 shareholder meeting, only Cale Case appeared in person.
Appellee Guion Nightingale (Nightingale) appeared by proxy.  No one else was present,
either in person or by proxy.  During the meeting, several resolutions were passed,
including reauthorizing and securitizing debts, and electing Nightingale and Cale Case as
the only members of the corporation's board of directors.  A board of directors meeting
followed, where the board passed another resolution electing Cale Case as president of
the corporation and replacing Shirley Case as secretary.  To pass these resolutions, Cale
Case and Nightingale determined that a quorum existed by counting Cale Case's 20
shares, Nightingale's 16 shares, and the 16 shares held jointly by Cale Case and Shirley
Case as husband and wife.

[¶6]    Shirley Case filed suit two weeks later on June 9, 2011 in district court.  Her
complaint contained three counts and challenged the validity of the decisions made at the
Sink & Rise shareholder meeting and the ensuing Sink & Rise board of directors
meeting.  The complaint brought (Count I) derivative claims against Sink & Rise (Count
II) a claim asking for declaratory judgment that the corporate actions taken at both the
shareholder and board of directors meetings were done so in violation of Wyoming law,
and (Count III) a claim asking for injunctive relief.  After filing an answer to the
complaint, Sink & Rise filed a motion for partial summary judgment seeking dismissal of
Counts I and III of the complaint.  The remaining Appellees joined the motion, and on
November 7, 2011, the district court granted it, dismissing the shareholders' derivative
claim in Count I and the claim for injunctive relief in Count III.

[¶7]    Count II proceeded to a bench trial on November 15-16, 2011.  The decision letter
of the court concluded that a quorum was reached at the shareholder meeting, that shares
were not improperly voted, and that the decisions made at the shareholder meeting were
valid.

**DISCUSSION**

---

[1]  The parties disagree about the status of the stock held by Appellee Guion Nightingale, but the issue is
not raised by Shirley Case.

[¶8]   Shirley Case's first issue on appeal alleges that the trial court committed reversible error when it found that the transactions contemplated by Sink & Rise Shareholder Resolutions 1, 2, and 3 and Board of Director Resolutions 1, 2, and 3 were not void, and ultra vires as directors' conflicting interest transactions under Wyo. Stat. Ann. § 17-16-860, *et. seq.* (LexisNexis 2011).

[¶9]   The Appellees argue that only Count I of Shirley Case's Verified Complaint sought relief on whether a directors' conflict of interest transaction occurred under § 17-16-860, *et. seq.*   Neither Count II (a declaratory judgment claim) or Count III (a temporary restraining order/injunction claim) discussed directors' conflicting interest transactions.  The Appellees point out that Sink & Rise filed a motion for partial summary judgment requesting Counts I and III be dismissed, and that Shirley Case did not respond.  As a result, on November 7, 2011, the court entered an Order Granting Motion for Summary Judgment and Dismissing Counts I and III of Plaintiff's Complaint with Prejudice, and stated:

> The Court finds that the Plaintiff has failed to file a response or otherwise controvert the assertions in the Defendants' Motion and Joinder by the October 13[sic], 2011 deadline which was set forth in the Court's July 18, 2011, Scheduling Order and Order Setting Trial.  The Court further finds that Plaintiff has not moved for or otherwise requested an enlargement of time within which to file a response. Accordingly, the Court, having reviewed the Motion and the Joinder, and being duly advised in the premises, finds that the Motion and the Joinder are well taken and therefore GRANTS the same.
> IT IS HEREBY ORDERED that Count I and Count III of Plaintiff's Verified Complaint are dismissed with prejudice as to all Defendants herein.

The Appellees also emphasize the fact that the district court discussed and ruled directly on this very issue when it refused to permit evidence and testimony regarding the conflict of interest during trial:

> THE COURT:  … My point in making that point was that we are only talking about the corporate authority for those resolutions.  We are not talking about issues such as conflict of interest or skullduggery by a corporate officer.  Those, as to Count II, seem to be clearly irrelevant.
> You have asked for relief in Count II that the Court rule that the resolutions were not passed with authority, the

3

resolutions are void and ultra vires. And Count II deals solely with the issues of which shares of stock can be voted.

MR. FORD: Well, that's where my confusion comes in, Your Honor. If you look at the various facts we pleaded, we pleaded the specific facts that were conflicted, not just the resolutions.

THE COURT: I agree with you.

MR. FORD: And we have asked that the – that the acts themselves – and I guess this is – this is wordsmithing and perhaps inappropriately – or incomplete wordsmithing on our point – but we are asking that the conflicted transactions would be ruled upon. But if, in fact, the resolutions were voted on by the directors who had direct conflicts, then that would get to the same point. It becomes circular at that point.

THE COURT: I don't – I guess I disagree with you, Mr. Ford.

MR. FORD: I get that.

THE COURT: I'm looking at Count II, Declaratory Judgment – Unauthorized Corporate Actions. I am looking at paragraphs 25 through 32 and they deal only with voting of specific shares of stock and the issue of quorum.

Next, I look at the November 7, 2011, Order granting summary judgment and dismissing Counts I and III. And I think that clearly, in my mind, precludes you from introducing evidence to this Court concerning issues of conflict of interest. And I think those are now irrelevant, and I won't allow them. I want you to understand the position of the Court.

MR. FORD: Okay. If I might just point out that the first paragraph of Count 25 (sic) incorporates all of the proceedings.

THE COURT: I understand that. But I'm not going to allow you to bootstrap a cause of action that got tossed out because you didn't reply to summary judgment. And that is what happened on I and III.

4

MR. FORD: Well –

THE COURT: That is what it is.  I'm stuck with it.  So with
that understanding, I assume if you need to make an opening,
I will begin evidence and testimony.

Although Shirley Case contends that the trial court's Order on Summary Judgment did not address the conflicting interest issue and remains unresolved, her failure to respond to Appellees' Motion for Partial Summary Judgment resulted in the lower court fully adjudicating Count I, which included her claims relating to conflicting interest transactions, and thus prevented her resurrection of the issue at trial.  We agree with this conclusion.

[¶10]  The Wyoming Rules of Civil Procedure grant district courts authority to set the timing for the filing of summary judgment motions and responses.  W.R.C.P.  56(c) provides that "[u]nless the court otherwise orders, the motion and any response and other papers relating thereto shall be served pursuant to Rule 6(c)."  Here, the district court issued its scheduling order that required all dispositive motions to be filed on or before October 3, 2011, and all responses to be filed on or before October 14, 2011.  Shirley Case never responded to the Motion for Partial Summary Judgment, precluding the district court from trying the conflicting interest issue alleged in Count I.

[¶11]  This Court has noted the importance of parties' compliance with the rules of civil procedure in the context of a party's failure to timely respond to a motion for summary judgment: "Compliance with the rules of civil procedure 'is mandatory, not optional.'" *Sandstrom v. Sandstrom*, 884 P.2d 968, 970-971 (Wyo. 1994).  Further, "[t]he district court should not receive or consider untimely filed affidavits in summary judgment matters.  To condone a practice which permits parties to simply ignore the Wyoming Rules of Civil Procedure would defeat the purpose for the rules." *Weber v. McCoy*, 950 P.2d 548, 553 (Wyo. 1997) (internal citation omitted).

[¶12]  Given this discussion, given that the Motion for Partial Summary Judgment went unopposed, and given that the district court did not entertain argument on this issue, we conclude that the district court's rulings on the issues raised in Counts I and III were final, and stand.

### *Joint Stock and the Quorum*

[¶13]  In her second and final issue, Shirley Case argues first that Cale Case was not entitled to vote the jointly held shares due to her absence and, consequently, those same shares could not be counted for quorum purposes.  According to Shirley Case, only shares "entitled to vote" are to be counted in establishing a quorum.   Cale Case

5

maintains that the district court's decision that the shares could be counted for quorum purposes is valid.

## STANDARD OF REVIEW

[¶14]  We recently stated in *Redland v. Redland*, 2012 WY 148, ¶ 48, 288 P.3d 1173, 1185 (Wyo. 2012) as follows:

> Following a bench trial, this court reviews a district court's findings and conclusions using a clearly erroneous standard for the factual findings and a *de novo* standard for the conclusions of law. *Piroschak v. Whelan*, 2005 WY 26, ¶ 7, 106 P.3d 887, 890 (Wyo. 2005).
>
> > The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.
>
> *Piroschak*, ¶ 7, 106 P.3d at 890. Findings may not be set aside because we would have reached a different result. *Harber v. Jense[n]*, 2004 WY 104, ¶ 7, 97 P.3d 57, 60 (Wyo. 2004). Further,
>
> > we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it.
>
> > *Id*.
>
> *Claman v. Popp*, 2012 WY 92, ¶ 22, 279 P.3d 1003, 1012 (Wyo. 2012) (quoting *Pennant Serv. Co. v. True Oil Co., LLC*, 2011 WY 40, ¶ 7, 249 P.3d 698, 703 (Wyo. 2011)). We review the district court's conclusions of law *de novo*. *Lieberman v. Mossbrook*, 2009 WY 65, ¶ 40, 208 P.3d 1296, 1308 (Wyo. 2009).

[¶15]  Although Cale Case urges us to summarily affirm the district court because he alleges Shirley Case's brief is not "presented with cogent argument or supported by pertinent authority," we will proceed to decide this case on the merits of the issue presented, having concluded that the briefs presented meet the standards required by this Court.

[¶16]  Turning to the issue, Shirley Case argues that because her estranged husband was not entitled to vote the jointly held shares, those same shares could not be counted for quorum purposes.  She reasons that because she was absent from the meeting and because only shares "entitled to vote" are to be counted in establishing a quorum, the shares in question were essentially useless at the meeting.

[¶17]  Although each party cites several secondary sources and other jurisdictions in support of their respective arguments, we find the answer in the Sink & Rise corporate documents, and within Wyoming law.  First, we reiterate the characterization of the stock as being owned by husband and wife with rights of survivorship.  We agree with the district court's further classification of the stock as creating a presumption of tenancy by the entirety under Wyoming law.  *Witzel v. Witzel*, 386 P.2d 103, 105 (Wyo. 1963) (the conveyance of property to husband and wife creates the presumption of a tenancy by the entirety).  As tenants by the entirety, each owns an ***undivided*** 100% interest in the 16 shares.

> In an estate of the entirety, the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest, but the whole, and therefore the death of one leaves the other still holding the whole title as before, with no one to share it.

*Talbot v. United States by & Through Secretary of the Treasury*, 850 F. Supp. 969, 975 (D. Wyo. 1994).

[¶18]  To further help us in our consideration, we turn to the corporate documents.  We first note that when considering corporate documents, it is well settled that "[b]ylaws are contractual in nature." *Mueller v. Zimmer*, 2005 WY 156, ¶ 35, 124 P.3d 340, 359 (quoting *Skane v. Star Valley Ranch Ass'n*, 826 P.2d 266, 271 (Wyo. 1992)). "Unsurprisingly, bylaws are interpreted according to the principles applicable to the interpretation of contracts." *Id.* (citations omitted).  Our standard for interpreting contracts is well-established and straightforward:

> According to our established standards for interpretation of contracts, the words used in the contract are afforded the plain meaning that a reasonable person would give them. *Doctors' Co. v. Insurance Corp. of America*, 864

7

P.2d 1018, 1023 (Wyo. 1993). When the provisions in the contract are clear and unambiguous, the court looks only to the "four corners" of the document in arriving at the intent of the parties. *Union Pacific Resources Co.*, 882 P.2d at 220; *Prudential Preferred Properties*, 859 P.2d at 1271. In the absence of any ambiguity, the contract will be enforced according to its terms because no construction is appropriate. *Sinclair Oil Corp. v. Republic Ins. Co.*, 929 P.2d 535, 539 (Wyo. 1996); *Prudential Preferred Properties*, 859 P.2d at 1271.

*Mueller*, ¶ 35, 124 P.3d at 359.

[¶19] With the above law in mind, we consider Sink & Rise's bylaws, which define what constitutes a "quorum," and relate the corporation's rule on voting shares:

6. <u>Quorum.</u> A majority of the outstanding shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of Shareholders. If a quorum is present, the affirmative vote of the majority of shares entitled to vote at the meeting shall be the act of the Shareholders. If less than a majority of the outstanding shares are represented at a meeting, which a quorum is presented or represented, any business may be transacted which might have been transacted at the meeting as originally called. The Shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough Shareholders to leave less than a quorum.

7. <u>Voting of Shares.</u> Subject to the provisions of 7(c) hereof, each outstanding share is entitled to vote the number of shares owned by him/her on each matter submitted to a vote at a meeting of Shareholders.
    (a) Neither treasury shares, nor shares of its own stock held by a corporation in a fiduciary capacity, nor shares held by another corporation if a majority of the shares entitled to vote for the election of such other corporation is held by the Corporation, shall be voted at any meeting or counted in determining the total number of outstanding shares at any given time.

According to the bylaws, for the corporation to count shares in determining a quorum, the shares must be (1) entitled to vote, and (2) represented in person or by proxy. From our reading of the corporate documents, and because the joint stock was held by husband and wife as tenants by the entirety, we conclude that the shares held jointly by Cale Case and Shirley Case were "entitled to vote" at the meeting. Cale Case represented the stock in person, as required by the bylaws.

[¶20] As the district court noted, and the parties agree here, the joint stock in question cannot be, and was not, ***voted*** without agreement between Cale Case and Shirley Case. "The stock itself is standard stock with full voting privileges. Whether the stock *will be* voted at a meeting does not control whether it is 'entitled to vote' at that meeting." (Italics in original.) "The fact that Cale Case and Shirley Case must agree on how to vote the stock before it can actually be voted does not strip it of its voting privileges." Cale Case did not attempt to vote the stock at the meeting, but instead considered it only for quorum purposes because regardless of whether it ***was*** voted, its voting potential was still full. For the corporation to count shares in determining a quorum, the bylaws are silent regarding the shares actually being voted, as opposed to "entitled to vote." The issue of whether stock held in a tenancy by the entirety can be voted by proxy without the signature of both owners is considerably different from, and does not control, the issue of whether that same stock is represented at a shareholder meeting through a single owner.

[¶21] Sink & Rise's bylaws do not prevent stock owned by a husband and wife as tenants by the entirety from being voted at a shareholder meeting ***if agreed upon***, nor do the bylaws prevent the same kind of stock from being counted for purposes of a quorum if represented in person. The stock in question was represented in person by Cale Case at the May 24, 2011 shareholder meeting, and it was properly counted to establish a quorum.

## CONCLUSION

[¶22] We affirm the district court's decision holding that the 16 shares of stock co-owned by Cale Case and Shirley Case as husband and wife were "entitled to vote" pursuant to the bylaws of Sink & Rise. The district court was correct in its characterization of Cale Case and Shirley Case holding the stock as tenants by the entirety. Because of the stock's representation in person at the shareholder meeting, the stock could be counted for quorum purposes. Consequently, the resolutions of the May 24, 2011 meeting were passed with requisite authority. Affirmed.