# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 96

APRIL TERM, A.D. 2021

August 20, 2021

ROBERT E. JAMES and NAOMI R.
JAMES,

Appellants
(Plaintiffs),

v.                                                              S-20-0272

GERALD C. JAMES and GLADYS
M. WINKEL,

Appellees
(Defendants).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellants:*
    Antonio E. Bendezu, Pelton Creek Law, LLC, Fort Collins, Colorado.

*Representing Appellees:*
    Jason M. Tangeman, Nicholas & Tangeman, LLC, Laramie, Wyoming; Kelly M.
    Neville, Brown & Hiser, LLC, Laramie, Wyoming.  Argument by Mr. Tangeman.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\* Chief Justice at time of oral argument.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.
Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne,
Wyoming 82002, of any typographical or other formal errors so that correction may be made before
final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]    Plaintiffs Robert and Naomi James filed a complaint asserting multiple claims against Defendants Gladys Winkel and Gerald James, including a claim to quiet title to real property located in Saratoga, Wyoming.  Defendant James answered and counterclaimed for ejectment of Plaintiffs from the property, trespass damages, and a declaratory judgment quieting title in his favor.  Defendant Winkel answered separately and counterclaimed for a declaratory judgment quieting title in Defendant James' favor.

[¶2]    On cross-motions for summary judgment, the district court denied Plaintiffs' motion for partial summary judgment.  Plaintiffs' motion asserted the doctrine of equitable conversion as a basis to quiet title in their favor, and the court denied it on the ground that Plaintiffs failed to timely plead a claim for relief under the doctrine.  The court granted summary judgment to Defendant James on his quiet title claim, and it granted both Defendants summary judgment on Plaintiffs' remaining claims.  It thereafter held a trial on Defendant James' damages and entered a judgment and order awarding damages.

[¶3]    Plaintiffs appeal the summary judgment rulings on their claims for equitable conversion, specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel.  We affirm.

## ISSUES

[¶4]    The dispositive issues on appeal are:

> 1.      Did the district court err in ruling on summary judgment that Plaintiffs could not maintain a claim for equitable conversion because they failed to timely plead it?
>
> 2.      Did genuine issues of material fact preclude the district court's grant of summary judgment to Defendants on Plaintiffs' claims for specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel?

## FACTS

[¶5]    In 2015, Gladys Winkel and Marie Tatum listed property that they owned as joint tenants with rights of survivorship for sale.  The property was located in Saratoga, Wyoming, and consisted of fourteen lots and several buildings, including seven houses.

[¶6]    Plaintiffs Robert and Naomi James wanted to purchase the property, and they asked Robert's father, Defendant Gerald James, to find out the lowest price Ms. Winkel and Ms.

1

Tatum would accept for it.[1] Gerald had known Ms. Winkel and Ms. Tatum for years and agreed to do so. Robert and Naomi thereafter made an offer on the property, and when they were unable to obtain financing, Ms. Winkel and Ms. Tatum agreed to sell the property to them by contract for deed.

[¶7] On November 27, 2015, Ms. Winkel and Ms. Tatum entered into the contract for deed with Robert and Naomi, and notice of the contract was recorded on December 29, 2015.[2] The contract for deed set a purchase price of $220,000, and it required no down payment or payment of interest, but it did require a lump-sum payment of $40,000 upon the sale of other real property Robert and Naomi owned. The following provisions are relevant to this dispute:

2.
PURCHASE PRICE AND TERMS

The purchase price of the property shall be $220,000 (Two Hundred and Twenty Thousand). The purchaser does hereby agree to pay to the order of the Seller the sum of $40,000 (Forty Thousand) upon the sale of the property they own at 805 Rochester, Saratoga, Wyoming. The purchasers' property will remain for sale on the real estate market until sold. The balance of $180,000 (One Hundred and Eighty Thousand) being due and payable as follows:

Balance payable in 180 monthly installments of $1000 Dollars (One Thousand) each, with the first installment being due and payable on the 1st day of January, 2016 and a like payment on the first day of each month thereafter until the 1st day of December, 2030, when the final payment shall be due. No interest.

*   *   *   *

4.
SECURITY

This contract shall stand as security of the payment of the obligations of the Purchaser.

---

[1] Because Plaintiffs and Defendant James share the same last name, we refer to them herein by their first names.

[2] Gerald and another individual by the name of Dave Quitter drafted the contract for deed. It is not clear from the record what Mr. Quitter's relationship is to the parties.

2

5.
## MAINTENANCE OF IMPROVEMENTS

All improvements on the property, including, but not limited to, buildings, trees or other improvements now on the premises, or hereafter made or placed thereon, shall be a part of the security for the performance of this contract and shall no[t] be removed therefrom. Purchaser shall not commit, or suffer any other person to commit, any waste or damage to said premises or the appurtenances and shall keep the premises and all improvements in as good condition as they are now.

\* \* \* \*

7.
## POSSESSION OF PROPERTY

Purchaser shall take possession of the property and all improvements thereon upon the execution of this contract [a]nd shall continue in the peaceful enjoyment of the property so long as all payments due under the terms of this contract are timely made. Purchaser agrees to keep the property in a good state of repair and in the event of termination of this contract, purchaser agrees to return the property to the seller in substantially the same condition as it now exists, ordinary wear and tear excepted. Seller reserves the right to inspect the property at any time with notice to the Purchaser.

8.
## TAXES, INSURANCE AND ASSESSMENTS

Purchaser shall pay all taxes and assessments levied against the property. Purchaser shall be solely responsible for obtaining any insurances.

9.
## DEFAULT

If the purchaser shall fail to perform any of the covenants or conditions contained in this contract on or before the date on which the performance is required, the Seller shall give the Purchaser notice of default or performance, stating the Purchaser is allowed 30 days from the date of the Notice to

cure the default or performance. In the event the default or failure of performance is not cured within the 30 (thirty) day time period, then Seller shall have the following remedy, in the discretion of seller:

Give the Purchaser a written notice specifying the failure to cure the default and informing the Purchaser that if the default continues for a period of an additional 30 (thirty) days after service of the notice of failure to cure, that without further notice, this contract shall stand cancelled and seller may regain possession of the property as provided herein.

In the event of default and termination of the contract by seller, Purchaser shall forfeit any and all payments made under the terms of this contract including taxes and assessments as liquidated.

The parties expressly agree that in the event of default not cured by the Purchaser and termination of this agreement, and Purchaser fails to vacate the premises, Seller shall have the right to obtain possession by appropriate court action.

## 10.
## DEED AND EVIDENCE OF TITLE

Upon total payment of the purchase price, Seller agrees to deliver to Purchaser a Warranty Deed to the subject property, a[t] Sellers [sic] expense, free and clear of any liens or encumbrances other than taxes and assessments for the current year. Title insurance on the subject property will be provided by the Seller at this time.

\* \* \* \*

## 14.
## CONVEYANCE

The seller reserves the right to convey, his or her interest in the above described land and such conveyance hereof shall be subject to the terms of this agreement.

## 15.
## ENTIRE AGREEMENT

4

> This agreement embodies and constitutes the entire understanding between the parties with respect to the transactions contemplated herein. All prior or contemporaneous agreements, understandings, representations, oral or written, are merged into this Agreement.

### 16.
### AMENDMENT – WAIVERS

> This agreement shall not be modified, or amended except by an instrument in writing signed by all parties.

[¶8]   On September 14, 2018, Marie Tatum passed away, and Ms. Winkel recorded an affidavit of survivorship to terminate the joint tenancy, which caused legal title to vest in her alone. Robert and Naomi thereafter continued to make their required $1,000 per month payments and did so through early April 2019. As of the April 2019 monthly payment, they had paid $40,000 toward the property's purchase.

[¶9]   In April 2019, Robert and Naomi's other property sold, and on April 22, Robert and Naomi delivered a check to Ms. Winkel in the amount of $40,000 to satisfy the lump-sum payment required under the contract for deed. The parties disagree as to their conversations concerning that lump-sum payment.

[¶10]  Naomi attested that in a conversation in early April 2019, Ms. Winkel told her that once she received the $40,000 lump-sum payment, she did not want any further payments and would deed the property to Robert and Naomi. Robert attested that Ms. Winkel told him essentially the same thing in early April, and again on April 22 when they delivered the lump-sum payment.

[¶11]  Ms. Winkel denied that she ever told Robert and Naomi that she was gifting them the entire remaining $140,000 balance of the purchase price. She attested:

> I informed [Naomi] that I intended to gift Plaintiffs a credit of $30,000 towards the balance owed under the Contract for Deed and have the remaining balance of $110,000 paid to Defendant Gerald James, his brother, and a friend as a gift to these three individuals. I wanted to make this gift to the three individuals in memory of service they gave to Marie Tatum and also so my daughter did not have to deal with Plaintiffs after my passing.

5

[¶12]  On May 3, 2019, Ms. Winkel executed a quitclaim deed that conveyed her interest in the property to Gerald.  Robert and Naomi made no further payments under the contract for deed to either Gerald or Ms. Winkel.

[¶13]  On September 30, 2019, Robert and Naomi filed a complaint against Gerald and Ms. Winkel.  The complaint alleged that Ms. Winkel agreed to modify the contract for deed to require no further payments after Robert and Naomi made the $40,000 lump-sum payment, and that the modification was evidenced by Ms. Winkel's writing of the word "Final" on her carbon copy of the April 22, 2019 receipt for the balloon payment.  Along with other relief, the complaint sought to quiet title to the property in Robert and Naomi's favor, a declaration that the contract for deed had been amended to forgive the $140,000 balance remaining after Robert and Naomi made the required lump-sum payment, and an order directing Ms. Winkel or Gerald to provide them a warranty deed to the property.[3]

[¶14]  On October 18, 2019, Robert and Naomi were sent a notice of default signed by attorneys for both Gerald and Ms. Winkel.  The notice advised them that they were six months in arrears on payments under the contract for deed and of their right to cure their default by submitting a payment of $6,000 by November 19, 2019.  It further advised that if they failed to cure the default, Gerald would exercise his rights under the contract for deed.

[¶15]  On November 25, 2019, Gerald filed an answer and counterclaim.  Through his counterclaims he sought ejectment of Plaintiffs from the property, damages for intentional trespass, a judgment declaring the contract for deed cancelled due to the default and all monies paid thereunder treated as liquidated damages, and a judgment quieting title in his favor.

[¶16]  On December 4, 2019, Ms. Winkel filed her answer and counterclaim.  Through her counterclaim, she sought declaratory relief identical to that sought by Gerald.

[¶17]  On June 22, 2020, the parties filed cross-motions for summary judgment.  Plaintiffs sought partial summary judgment based on the doctrine of equitable conversion.  They asserted that the contract for deed was not an installment land contract but was instead a conveyance with a mortgage back, and that under the doctrine, legal title to the property vested in Plaintiffs upon execution of the contract for deed.  That being the case, they argued, Ms. Winkel did not have legal title to quitclaim to Gerald, and they were entitled to summary judgment on the quiet title claim and Gerald's counterclaims for ejectment and trespass.

---

[3] The complaint also asserted claims against Ms. Winkel for: breach of contract; breach of fiduciary duty; breach of the implied covenant of good faith and fair dealing; promissory estoppel; and fraud.  Against Gerald, the complaint asserted claims for: breach of fiduciary duty; tortious interference with a contract or business expectancy; and breach of contract.

6

[¶18] Defendants jointly moved for summary judgment on all claims and counterclaims. In opposition to Plaintiffs' motion, they responded to the merits of Plaintiffs' equitable conversion claim, but also argued that the claim should not be considered because Plaintiffs failed to plead it.

[¶19] On August 17, 2020, the district court issued an order on the cross-motions for summary judgment. The court denied Plaintiffs' motion on the ground that they had failed to plead equitable conversion as required by W.R.C.P. 8. It further ruled:

> Additionally, Rule 15 of the Wyoming Rules of Civil Procedure sets forth the procedures and timelines for amended and supplemental pleadings. In the present matter, there is no indication in the record of Plaintiffs filing an amended complaint nor seeking leaving of the court to amend their claims or defenses to include a theory of equitable conversion. As such, the Court finds Plaintiffs' claim/defense of equitable conversion/equitable mortgage untimely.

[¶20] The district court granted Defendants' motion for summary judgment on all of Plaintiffs' claims, and on Defendants' ejectment and quiet title claims. It denied summary judgment on Gerald's claim for damages because it found "material issues of fact regarding Plaintiffs' failure to vacate the Property after proper notice." With respect to its ruling in favor of Defendants on Plaintiffs' claims, the court made numerous findings, but the only one relevant to Plaintiffs' appeal was its finding that the contract for deed was not modified to forgive the $140,000 balance remaining after Plaintiffs made their $40,000 lump-sum payment.

[¶21] On August 25, 2020, the district court held a bench trial on Gerald's damages claim, and on September 16, 2020, it issued its judgment and order. The court awarded Gerald $6,000 in damages for Plaintiffs' failure to make monthly payments under the contract for deed for the months of May 2019 through October 2019, and $18,000 for the nine months Plaintiffs refused to vacate the property and were hold-over tenants. Plaintiffs timely appealed to this Court.

## STANDARD OF REVIEW

[¶22] Plaintiffs do not appeal the damages award and instead appeal only the district court's summary judgment ruling on their claims for equitable conversion, specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. "When the parties file cross-motions for summary judgment and the district court issues a decision completely resolving the case by granting summary judgment to one party and denying the other's motion, we review both aspects of the district court's order." *Gowdy v. Cook*, 2020 WY 3, ¶ 23, 455 P.3d 1201, 1207

(Wyo. 2020) (citing *Dowell v. Dowell* (*In re Mark E. Dowell Irrevocable Trust*), 2012 WY 154, ¶ 16, 290 P.3d 357, 360 (Wyo. 2012)). Because the district court's summary judgment ruling resolved all of Plaintiffs' claims, and none of those claims were tried on the merits, we review both its rulings denying Plaintiffs' motion and granting Defendants' motion.

[¶23] We review a district court's ruling on summary judgment de novo and may affirm on any legal ground appearing in the record. *Burns v. Sam*, 2021 WY 10, ¶ 7, 479 P.3d 741, 743 (Wyo. 2021) (citing *Bear Peak Res., LLC v. Peak Powder River Res.*, LLC, 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017)).

> We review a district court's order granting summary judgment de novo and afford no deference to the district court's ruling. *Thornock v. PacifiCorp*, 2016 WY 93, ¶ 10, 379 P.3d 175, 179 (Wyo. 2016). This Court reviews the same materials and uses the same legal standard as the district court. *Id*. The record is assessed from the vantage point most favorable to the party opposing the motion ..., and we give a party opposing summary judgment the benefit of all favorable inferences that may fairly be drawn from the record. *Id*. A material fact is one that would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Id*.

*Candelaria v. Karandikar*, 2020 WY 140, ¶ 11, 475 P.3d 548, 551 (Wyo. 2020) (quoting *Varela v. Goshen Cnty. Fairgrounds*, 2020 WY 124, ¶ 12, 472 P.3d 1047, 1052 (Wyo. 2020)).

[¶24] Concerning summary judgment rulings based on the pleadings, we have said:

> Summary judgments are often used when a claim is barred for failing to comply with procedural requirements. *See*, *e.g.*, *Case v. Sink & Rise, Inc.*, 2013 WY 19, 297 P.3d 762 (Wyo. 2013) and *Sandstrom v. Sandstrom*, 884 P.2d 968 (Wyo. 1994) (affirming summary judgments dismissing claims because of the appellants' failures to respond to motion in accordance with the rules). Although a summary judgment motion may be based upon affidavits and other documents which assert a lack of material facts, it may also be based solely on a question of law which is set out exclusively in the pleadings. Under those circumstances, a summary judgment motion is functionally equivalent to a motion to dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings under Rule 12(c). *Landmark, Inc. v. Stockmen's Bank & Trust, Co.*, 680 P.2d 471, 474-75 (Wyo. 1984).

*Motzco Co. USA, LLC v. A & D Oilfield Dozers, Inc.*, 2014 WY 5, ¶ 16, 316 P.3d 1177, 1181 (Wyo. 2014).

## DISCUSSION

### I.　District Court's Ruling on Equitable Conversion

[¶25]　Plaintiffs contend that the district court erred in finding that Rule 8 of the Wyoming Rules of Civil Procedure barred their claim for relief under the doctrine of equitable conversion, and that they were entitled to summary judgment on the claim. We find the Rule 8 pleading requirement dispositive.

[¶26]　To provide context for our discussion of the pleading requirements for an equitable conversion claim, we begin with background on the doctrine and its applicability. Typically, under an installment land contract, the seller of property retains title until the buyer completes the payments required under the contract.[4]

> In an installment land contract, the seller agrees to accept payments from the purchaser, generally by a series of installments over time, until the purchase price as established by the contract has been paid. When the contract price has been paid, the seller must deliver a deed to the purchaser. *Insurance Company of North America v. Ventling* [*Matter of Estate of Ventling*], 771 P.2d 388 (Wyo. 1989); E. Rudolph, [*The Wyoming Law of Real Mortgages*,] at 147-48 [(1969)]. Prior to the final installment payment and delivery of the deed, the seller retains legal title. *Id.*; *Baldwin* [*v. McDonald*], 156 P. 27 [(Wyo. 1916)]; 7 R. Powell, *The Law of Real Property* ¶ 938.20[1] (1989). Although the purchaser usually is given the right to possession, his interest in an installment land contract is equitable, not legal. *Insurance Company of North America*, 771 P.2d 388; *Baldwin*, 156 P. 27.

*Metro. Mortg. & Sec. Co., Inc. v. Belgarde*, 816 P.2d 868, 872 (Wyo. 1991) (quoting *Cliff*, 777 P.2d at 601).

[¶27]　In contrast, when a transaction is a conveyance with a mortgage back, legal title vests in the buyer/mortgagor upon execution, and the mortgagee holds a security interest in the property.

---

[4] A contract for deed is also known as an installment land contract. *Cliff & Co., Ltd. v. Anderson*, 777 P.2d 595, 598 n.5 (Wyo. 1989).

9

> The fundamental difference distinguishing a mortgage from an installment land contract, at least in states applying a lien theory to mortgages, is that, in a mortgage, fee title has vested in the purchaser/mortgagor.

*Metro. Mortg.*, 816 P.2d at 872 (quoting *Cliff*, 777 P.2d at 601).[5]

[¶28]   Departing from this usual distinction between an installment land contract/contract for deed and a mortgage, the doctrine of equitable conversion operates to deem a buyer under a contract for deed or an installment land contract the holder of legal title from the time the instrument is executed.

> The equitable conversion theory treats the interest of the purchaser to be tangible real estate from the time the installment land contract or contract for deed is executed and considers the purpose of the retention of title by the vendor to be a security interest, with the contractual right to the balance of the purchase price treated as personalty. The net result is that the seller holds the legal title in trust for the buyer.

*Matter of Estate of Ventling*, 771 P.2d 388, 390 (Wyo. 1989) (internal citations omitted); *see also Bentley v. Director of Off. Of State Lands & Invs.*, 2007 WY 94, ¶ 32, 160 P.3d 1109, 1118 (Wyo. 2007).

[¶29]   The doctrine applies when a transaction, regardless of being titled a contract for deed or installment land contract, is in fact a mortgage.[6]  *See Bentley*, ¶¶ 33-35, 160 P.3d at 1118-19 (rejecting application of the doctrine to an installment land contract); *Metro. Mortg.*, 816 P.2d at 873 (noting that in considering application of the doctrine, a distinction

---

[5] Wyoming applies a lien theory to mortgages.  *Cliff*, 777 P.2d at 601 n.8.
[6] Plaintiffs suggest in their briefing that the doctrine applies when a contract is bilateral rather than unilateral.  That is not the correct distinction.  "A unilateral contract results from an exchange of a promise for an act, while a bilateral contract results from an exchange of promises."  1 Williston on Contracts § 1:17 (4th ed. May 2021); *see also Brodie v. Gen. Chem. Corp.*, 934 P.2d 1263, 1265 (Wyo. 1997).  An installment land contract or contract for deed may be a unilateral contract.  *Metro. Mortg.*, 816 P.2d at 875.  It may also, however, be a bilateral contract if it contains an exchange of promises.  *See*, *e.g.*, *Gross v. Regor Fin. Co.*, 96 F.2d 37, 38 (5th Cir. 1938) (holding that a bilateral and not a unilateral contract was created when a purchaser promised to pay for land in installments and the seller promised to deliver a deed upon final payment).  The fact that an installment land contract or contract for deed is bilateral does not implicate the doctrine of equitable conversion.  The doctrine applies only when the parties enter into a bilateral agreement that is the equivalent of a mortgage.  *Metro. Mortg.*, 816 P.2d at 873.  An installment land contract is not the functional equivalent of a mortgage absent clear proof that the parties intended to create a mortgagor-mortgagee relationship.  *Id.* at 872 (quoting *Cliff*, 777 P.2d at 600-01).

must be made between an installment land contract and "a bilateral agreement equivalent to a mortgage, either in law or equity").[7]

[¶30]  The instrument the parties executed in this case was titled a contract for deed.  It provided that the seller would retain title to the property until the purchase price was paid, and Ms. Winkel did in fact retain legal title, which makes it look very much like the contract for deed or installment land contract that it purported to be.  Plaintiffs do not dispute this, but they contend that the contract also contains security terms that reflect the parties' intention to execute a conveyance with a mortgage back.  Based on that intent to create a mortgage, they argue that under the doctrine of equitable conversion, they are entitled to be treated as if they held legal title from the date the contract was executed.

[¶31]  The district court refused to consider Plaintiffs' equitable conversion argument because they did not timely plead it.  Plaintiffs contend that this was error because: 1) equitable conversion is not something that must be pled; and 2) even if it were required to be pled, they timely and adequately pled it.  We disagree and conclude that the court properly refused to consider the claim.

[¶32]  Rule 8(a)(2) of the Wyoming Rules of Civil Procedure specifies that a "pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

> This rule is based upon the theory of notice pleading and only requires that a plaintiff "plead the operative facts involved in the litigation so as to give fair notice of the claim to the defendant." Further, "pleadings must be liberally construed in order to do justice to the parties...."

*Acorn v. Moncecchi*, 2016 WY 124, ¶ 66, 386 P.3d 739, 759 (Wyo. 2016) (quoting *Ridgerunner, LLC v. Meisinger*, 2013 WY 31, ¶ 12, 297 P.3d 110, 114 (Wyo. 2013)); *see also Forbes v. Forbes*, 2015 WY 13, ¶ 39, 341 P.3d 1041, 1054 (Wyo. 2015) ("Whether the specificity requirement of the rule has been satisfied rests upon whether fair notice has been provided to the opposing party.") (quoting *Harris v. Grizzle*, 599 P.2d 580, 583 (Wyo. 1979)).

## A.      Requirement that Doctrine of Equitable Conversion be Pled

[¶33]  Plaintiffs contend that they were not required to plead their equitable conversion claim because application of the doctrine of equitable conversion is a question of how the

---

[7]  An equitable mortgage is "an instrument that was not properly prepared or executed to constitute a legal mortgage." *Marple v. Wyo. Prod. Credit Union*, 750 P.2d 1315, 1319 n.5 (Wyo. 1988).  We have recognized that distinguishing between equitable and legal mortgages is of little benefit in determining the effect to be given a transaction. *Id*.

contract for deed is interpreted, as opposed to a claim for relief or an affirmative defense under Rule 8. We have previously rejected this distinction in determining whether a matter must be pled.

[¶34] In *Ridgerunner*, the plaintiffs filed a complaint against a corporation and one of its owners. ¶ 3, 297 P.3d at 112. The individually named owner moved to dismiss the claims against him because the complaint made no allegations that would justify piercing the corporate veil. *Id*. ¶ 4, 297 P.3d at 112. In upholding the dismissal, we first observed that "this Court has long recognized that disregarding the corporate entity, or piercing the corporate veil, is a judicially created equitable doctrine used in situations where 'corporations have not been operated as separate entities as contemplated by statute and, therefore, are not entitled to be treated as such.'" *Id*. ¶ 14, 297 P.3d at 115 (quoting *Kaycee Land & Livestock v. Flahive*, 2002 WY 73, ¶ 6, 46 P.3d 323, 326 (Wyo. 2002)). We then held:

> While piercing the corporate veil is a "doctrine wherein liability for an underlying cause of action may be imposed upon a particular individual," *Dombroski v. WellPoint, Inc.*, 173 Ohio App.3d 508, 879 N.E.2d 225, 231 (2007), *rev'd on other grounds by* 119 Ohio St.3d 506, 895 N.E.2d 538 (2008) (quoting *Geier v. Nat'l GG Indust.*, 1999 WL 1313640 (Ohio App. 11 Dist.)), and not a separate cause of action, the complaint must still "contain sufficient information to indicate a desire to proceed under the doctrine of piercing the corporate veil." *Dombroski*, 879 N.E.2d at 231, *rev'd on other grounds by* 895 N.E.2d 538.

*Ridgerunner*, ¶ 15, 297 P.3d at 116.

[¶35] This reasoning applies with equal force to a party's desire to seek relief under the doctrine of equitable conversion. Like piercing the corporate veil, the doctrine of equitable conversion changes the nature of the relief to which the parties to a land contract may be entitled, and it may change the course of litigation over the contract.

> Our cases structure a presumption that an instrument such as this is a "unilateral contract" pursuant to which the seller is limited to forfeiture as a remedy, but they also recognize that a contrary intention can be established by either party. The claim of a contrary contention can first be raised by the seller simply by eschewing forfeiture as the remedy and seeking the alternative remedy of foreclosure followed by a deficiency. The question of the intention of the parties is squarely raised when the seller proceeds in that fashion and, in treating with

12

that issue, the court must address both the written agreement and the surrounding circumstances. It is likely that the issue will require a trial in most cases in the absence of an admission by the purchaser that the remedy invoked by the seller is correct.

Conversely, the purchaser can assert this issue by bringing an action for relief if the seller proceeds to assert the remedy of forfeiture. In the absence of any admission by the seller, the claim that a bilateral contract is present would require a trial in most cases because of the necessity to consider the written agreement and the surrounding circumstances to discern intent. It appears that, once the question is raised, any presumption that favors an installment land contract can be rebutted by the party asserting a bilateral contract if that party can demonstrate an intent to create a mortgage.

*Metro. Mortg.*, 816 P.2d at 875.

[¶36]   Given that application of the doctrine of equitable conversion turns on the parties' intent, as gleaned from the written contract and the surrounding circumstances, invoking it will most certainly affect how the parties approach discovery.  Moreover, the doctrine also affects the parties' remedies and clearly may affect the course of litigation.  That being the case, we hold that a party seeking to invoke it must plead sufficient facts to put the other party on notice.[8]

## B.    Adequacy of Plaintiffs' Pleadings

[¶37]   Although the district court's ruling on Plaintiffs' equitable conversion claim was a denial of their motion for summary judgment, the ruling was solely a question of law based on the pleadings and was the functional equivalent of a W.R.C.P. 12(b)(6) dismissal.  *See Motzko*, ¶ 16, 316 P.3d at 1181.  We will therefore review the ruling as we would a Rule 12(b)(6) dismissal and accept the facts alleged in the complaint as true and view them in the light most favorable to Plaintiffs.  *See Dockter v. Lozano*, 2020 WY 119, ¶ 6, 472 P.3d 362, 364 (Wyo. 2020) ("We employ the same standards and examine the same materials as the district court: we accept the facts alleged in the complaint . . . as true and view them

---

[8] We are not convinced otherwise by Plaintiffs' suggestion that in other cases this Court raised the doctrine's applicability *sua sponte*.  First, the two cases that Plaintiffs cite were both disputes over whether the remedy under the contract at issue was foreclosure or forfeiture.  *See Cliff*, 777 P.2d at 598; *Marple*, 750 P.2d at 1317.  In addressing that dispute, the Court in both cases addressed whether the contracts were installment land contracts or mortgage agreements, but it did not in either case discuss the doctrine of equitable conversion.  *Id*.  Additionally, the question of what specificity is required in pleading grounds for relief under a land contract was not an issue raised or addressed in either case.

13

in the light most favorable to the non-moving party.") (quoting *Craft v. State ex rel. Wyo. Dep't of Health*, 2020 WY 70, ¶ 9, 465 P.3d 395, 399 (Wyo. 2020)).

[¶38]  Even viewing the facts pled in the light most favorable to Plaintiffs, we are unable to find any allegations that would put Defendants on notice that Plaintiffs intended to invoke the doctrine of equitable conversion.  First, the term equitable conversion does not appear in Plaintiffs' complaint or in their answer to Defendants' counterclaims. Additionally, as discussed earlier, application of the doctrine depends on the existence of a mortgage, either legal or equitable.  Yet neither Plaintiffs' complaint nor their answer to Defendants' counterclaims alleged that the installment land contract was, or created, a mortgage.  Nor did either claim that Defendants were limited to a remedy of foreclosure or that Plaintiffs had a statutory right of redemption.[9]

[¶39]  Plaintiffs nonetheless contend that the complaint was sufficient to put Defendants on notice because: 1) it contained an allegation that Plaintiffs had held equitable title to the property since November 27, 2015; and 2) the contract for deed was attached to the complaint and the applicability of the doctrine was "plainly evident on the face of that contract."  We disagree.

[¶40]  The allegation that Plaintiffs held equitable title to the property as of November 27, 2015 would have done little to alert Defendants to Plaintiffs' equitable conversion claim. Equitable title is the interest a buyer has under an installment land contract.  *See Metro. Mortg.*, 816 P.2d at 872 ("Although the purchaser usually is given the right to possession, his interest in an installment land contract is equitable, not legal.") (quoting *Cliff*, 777 P.2d at 600-01); *Ventling*, 771 P.2d at 389 (under installment land contract, "[t]he interest of the buyer is equitable, not legal"); *see also Cash v. Granite Springs Retreat Ass'n, Inc.*, 2011 WY 25, ¶ 17, 248 P.3d 614, 620 (Wyo. 2011) (equitable title is "the right to receive legal title upon performance of an obligation").  Equitable conversion, on the other hand, operates to convert a buyer's equitable interest under an installment land contract into a legal one.  *See Bentley*, ¶ 32, 160 P.3d at 1118 ("The equitable conversion theory treats the interest of the purchaser to be tangible real estate from the time the installment land contract or contract for deed is executed[.]"); *see also Ventling*, 771 P.2d at 390 (under the doctrine of equitable conversion, "[t]he net result is that the seller holds the legal title in trust for the buyer").  Plaintiffs' allegation that they held equitable title was thus consistent with an installment land contract and inconsistent with their equitable conversion claim and therefore obviously would not have put Defendants on notice.

[¶41]  Plaintiffs' suggestion that attaching the contract for deed to the complaint should have placed Defendants on notice of their equitable conversion claim is likewise

---

[9] If the contract for deed were a mortgage, its forfeiture provision would be unenforceable and Defendants' sole remedy would be foreclosure and a public sale.  *Metro. Mortg.*, 816 P.2d at 872.  Additionally, Plaintiffs would have a statutory right of redemption.  *Cliff*, 777 P.2d at 601; *see also* Wyo. Stat. Ann. § 1-18-103 (LexisNexis 2021).

unpersuasive. It is akin to the argument we rejected in *Ridgerunner*, that simply naming the owner of a corporation as a defendant is sufficient to place him on notice that the plaintiffs sought to pierce the corporate veil.

> The complaint, however, even when liberally construed, does not indicate a desire to pierce the corporate veil. Although the appellants named Richard Meisinger as an individual defendant, the complaint does not contain any information or allegations, such as the factors the courts consider when determining whether it is proper to pierce the corporate veil, which would put the appellees on notice of that desired intent.

*Ridgerunner*, ¶ 16, 297 P.3d at 116.

[¶42] Similarly, Plaintiffs' allegations concerning the contract for deed did not evidence a desire to have it interpreted as a mortgage. *See Sannerud v. Brantz*, 928 P.2d 477, 481 (Wyo. 1996) (outlining factors relevant to determining whether transaction should be considered a mortgage). Their allegations instead related solely to their claim that the contract for deed was modified to forgive $140,000 of the purchase price and transfer title to Plaintiffs. In the context of those allegations, we can see no reason that having the contract for deed attached to the complaint would have put Defendants on notice of an equitable conversion claim.

[¶43] Plaintiffs were required to plead facts sufficient to put Defendants on notice that they intended to seek relief under the doctrine of equitable conversion. They did not do so, and we therefore uphold the district court's denial of their motion for summary judgment on that claim.

## II. District Court's ruling on Plaintiffs' claims for specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel

[¶44] As indicated earlier, the district court made numerous findings when it granted Defendants summary judgment on Plaintiffs' claims for specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. The sole finding that Plaintiffs challenge is that the contract for deed was not modified to forgive $140,000 of the purchase price.

[¶45] Plaintiffs claim that the contract for deed was amended to forgive $140,000 of the purchase price when Ms. Winkel wrote the word "final" on the receipt documenting their $40,000 lump-sum payment and told them they owed her nothing more. The district court found that because the notation on the receipt was not signed by either party and appeared

15

only on Ms. Winkel's copy of the receipt, it was not a valid written amendment, as the contract for deed required for any modification.

[¶46] Plaintiffs contend that the court erred because our precedent allows for oral modification of a contract even when that contract requires all amendments to be in writing. They further argue that the parties' dispute over the circumstances surrounding the notation on the receipt, along with oral promises Ms. Winkel made to forgive the $140,000, created genuine issues of material fact that precluded summary judgment.

[¶47] Plaintiffs are correct that even when a contract contains a clause requiring any modification to be in writing, we may in appropriate circumstances recognize an oral modification. *See Ruby Drilling Co., Inc. v. Duncan Oil Co., Inc.*, 2002 WY 85, ¶ 11, 47 P.3d 964, 968 (Wyo. 2002) ("We have further indicated that an oral modification of a written agreement may be possible even when the agreement contains a no-unwritten-modification clause. The party asserting that a written agreement was modified by the subsequent expressions or conduct of the parties must prove so by clear and convincing evidence."). We need not decide this question, however, because the lack of consideration for the alleged modification provides an independent basis to uphold the district court's ruling. *See Burns*, ¶ 7, 479 P.3d at 743 ("This Court . . . may affirm a summary judgment on any legal grounds appearing in the record.").

[¶48] "[M]odification of an agreement is void unless supported by consideration." *Knapp v. Landex Corp.*, 2006 WY 36, ¶ 14, 130 P.3d 924, 928 (Wyo. 2006) (citing *Schlesinger v. Woodcock*, 2001 WY 120, ¶ 14, 35 P.3d 1232, 1237 (Wyo. 2001)). "Consideration may take a variety of forms including the performance of some act, a forbearance, or the creation, modification, or destruction of a legal relationship," but it cannot be "an obligation the promisor is already legally required to perform." *Schelsinger*, ¶ 14, 35 P.3d at 1237 (citing *Prudential Preferred Properties v. J and J Ventures, Inc.*, 859 P.2d 1267, 1272 (Wyo. 1993); *Prows v. State*, 822 P.2d 764, 768 (Utah 1991)).

[¶49] Plaintiffs contend that Ms. Winkel modified the contract for deed after they made the $40,000 lump-sum payment in April 2019. It is not clear that Plaintiffs assert that the $40,000 payment was consideration for the modification, but it certainly could not have been because they were already obligated to make that payment under the contract for deed. *See, e.g.*, *Schlesinger*, ¶ 14, 35 P.3d at 1237-38 ("Payment of a debt which is due and undisputed does not constitute consideration for a promise. Likewise, a mere promise to pay a debt for which the promisor is already legally bound does not constitute a consideration sufficient to support a new contract."); *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 239 (Wyo. 2000) ("[T]his Court follows the 'pre-existing duty rule,' namely, an agreement to do what one is already bound to do cannot serve as consideration to support a modification."). Beyond that, Plaintiffs have cited no evidence of consideration for the modification and have in fact admitted there was none. Robert James testified:

16

Q. Did you provide Ms. Winkel with anything of value in – in exchange for that $140,000?

A. No.

[¶50] Naomi James testified:

Q. And you guys are now gifted $140,000, correct?

A. I wouldn't characterize it as a gift. It was our contract was ended.

Q. Why wouldn't it be a gift? You didn't give – you and Robby didn't give Gladys or Gerald anything. You're getting a $140,000 benefit, correct?

A. Correct.

Q. So that's a gift, right?

A. Again, I don't know that I would characterize it as a gift. She just doesn't want any more money from us.

Q. And you didn't give her anything else for the $140,000, correct?

A. No.

[¶51] Because the alleged modification was not supported by consideration, it is void. We therefore uphold the district court's grant of summary judgment to Defendants on Plaintiffs' claims for specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel, which Plaintiffs acknowledge are all claims premised on the alleged modification of the contract for deed.

[¶52] Affirmed.